JOHN JACOB ASTOR et al., Respondents, *v.* THE ARCADE RAILWAY COMPANY, Appellant.

The act of 1868 (Chap. 842, Laws of 1868), entitled "An act to provide for the transmission of letters, packages and merchandise in the cities of New York and Brooklyn * * * by means of pneumatic tubes to be constructed beneath the surface," etc., is not violative of the provision of the state Constitution (art. 3, § 16), prohibiting the passage of any local or private bill embracing more than one subject, and requiring that to be expressed in the title.

The provision in the act authorizing the formation of a corporation for the purpose of carrying out its objects and purposes in the manner specified in the general manufacturing act, clothing it with the powers and privileges conferred and subjecting it to the duties and obligations imposed by said act, so far as not inconsistent with the provisions of said act of 1868, is a matter fairly embraced within the title, and a corporation so formed is an appropriate instrumentality to accomplish the declared purposes.

A corporation so formed is a manufacturing corporation with powers limited to the accomplishment of the purposes so declared.

The words "pneumatic tubes," as used in the said act, mean simply tubes for the transmission of parcels, operated by atmospheric pressure applied within the tubes.

Such tubes are in no sense railways, and the act confers no railroad powers upon a corporation organized as provided therein, and a declaration of the object of the incorporation, contained in a certificate executed and filed for the purposes of such an organization, could give to the corporation no greater powers than those conferred by the act itself.

The act of 1873 (Chap. 185, Laws of 1873), declared in its title to be "supplemental to and amendatory of" said act of 1868, the title to which is quoted, with the addition of the words "and to provide for the transportation of passengers in said tubes" is violative of said constitutional provision, as it authorizes the construction of underground railways by the corporation organized under the original act, with authority, upon obtaining the requisite consents, to propel its cars by steam or any other motive power, and thus to transform itself into a railroad corporation.

To comply with said constitutional requirement the title must be such at least as to fairly suggest or give a clue to the subject dealt with in the act.

The said act of 1873 being thus unconstitutional and void, all subsequent legislation based upon it, *i. e.*, the acts of 1874, 1881 and 1886 (Chap. 503, Laws of 1874; chap. 454, Laws of 1881; chap. 312, Laws of 1886), fall with it.

The said act of 1886 is also violative of the constitutional provision (art. 3, § 18), forbidding the passage of a private or local bill granting to any

corporation "the right to lay down railroad tracks," except upon the conditions specified, or granting to a private corporation "any exclusive privilege, immunity or franchise whatever."

These prohibitions may not be evaded under the pretense of an amendment of the charter of a corporation organized before the adoption of said constitutional provision, or a regulation of the exercise of powers and franchises possessed by it.

*In re G. E. R. Co.* (70 N. Y. 361) distinguished.

(Argued February 6, 1889; decided March 12, 1889.)

APPEAL from an interlocutory judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 18, 1888, which reversed a judgment of Special Term sustaining a demurrer to the complaint herein and dismissing said complaint, and which overruled said demurrer. (Reported below, 48 Hun, 562.)

This action was brought by plaintiffs, who are the owners of property fronting upon Broadway and Madison avenue, in the city of New York, to restrain the construction by defendant of a railway under the surface of said streets, which the complaint alleged defendant was about to attempt to do, claiming authority under the act (Chap. 312, Laws of 1886), which act the complaint alleged to be unconstitutional and void.

*Edward B. Thomas* and *Delos McCurdy* for appellant. The title of act of 1868 (Chap. 842), correctly expresses the subject of that act. (*People* v. *Lawrence*, 41 N. Y. 137; *State* v. *Town of Union*, 33 N. J. L. 350; *Hammond* v. *Lesseps*, 31 La. Ann. 337; *Stewart* v. *Kinsella*, 14 Minn. 524; *People* v. *Briggs*, 50 N. Y. 553; *Sun Co.* v. *N. Y.*, 8 id. 241; *People* v. *Hulbert*, 24 Mich. 55; *Parkinson* v. *State*, 14 Md. 184; *Brewster* v. *Syracuse*, 19 N. Y. 116; *In re Orphan Home*, 92 id. 116, 120.) The title of the act of 1873 (chap. 185) expressed the subject of that act. (*People* v. *N. Y. C. & H. R. R. R. Co.*, 28 Hun, 553; *In re Knaust*, 101 N. Y. 188; *Walker* v. *Caldwell*, 4 La. Ann. 297; *Johnson* v. *Higgins*, 3 Metc. [Ky.] 566; *Tuttle* v. *Strout*, 7 Minn. 465; *Simpson* v. *Bailey*, 3 Oreg. 515; *Pelham* v. *Woolsey*, 16 Fed. Rep. 418; *In re New York, etc., Bridge*, 72 N. Y. 533; *People* v. *Whitlock, etc.*, 92 id.

197; *People* v. *Briggs,* 50 id. 562; 19 id. 116; 8 id. 252; 50 id. 506, 507; *In re Dept. Public Parks,* 86 id. 440; *Snipe* v. *Shriner,* 44 N. J. L. 208; Pomeroy's Note, Sedg. on Stat. & Const. Law [2d ed.] 520; *People* v. *Brooklyn, etc., Co.,* 89 N. Y. 92; *In re Sackett, etc., Streets,* 74 id. 103; *In re N. Y. E. R. R. Co.,* 70 id. 338.) The acts of 1873 and 1874 conferred an immediate franchise to transport passengers and property by means of a railway, and although the defendant did not observe the terms of those statutes as to time, yet the Constitution did not affect the statutes, nor the power of the legislature to waive the default. (Endlich on Interpretation of Statutes, § 178; *People* v. *Terry,* 108 N. Y. 1; *Julius* v. *Bishop of Oxford,* 5 App. Cas. 223; *Rogan* v. *Walker,* 1 Wis. 562; *Schulenberg* v. *Harriman,* 21 Wall. 60; *Leavenworth* v. *U. S.,* 92 U. S. 741; *Taylor* v. *Mason,* 9 Wheat. 343; Wood's Railway Law, 25; *Conaughty* v. *Saratoga County Bank,* 92 N. Y. 401; *Uline* v. *N. Y. C. & H. R. R. R. Co.,* 101 id. 106; *Story* v. *N. Y. El. R. R. Co.,* 90 id. 123; *Shim* v. *Roberts,* 20 N. J. L. 444; *Findlay* v. *King,* 3 Peters, 375, 376, 377; 2 Atk. 18; Cases T. T. 164, 166; 2 P. Wms. 626; 2 Pow. on Dev. 257; 1 Salk. 170; 2 id. 570; 4 Mod. 68; 2 Black. 154; *Doe* v. *Considine,* 6 Wall. 458, 472; *Livingstone* v. *Livingstone,* 52 N. Y. 118; *Blanchard* v. *Morey,* 56 Vt. 170; *Leaver* v. *Gauss,* 62 Iowa, 314; *Craig* v. *Wells,* 11 N. Y. 320, 321; *Nicoll* v. *N. Y., etc., R. R. Co.,* 12 N. Y. 121; *C. & C. R. R. Co.* v. *White,* 14 S. C. 51–63; *Duryee* v. *Mayor, etc.,* 96 N. Y. 493; *Howard* v. *Turner,* 6 Greenl. 106; *In re Kings Co. El. R. R. Co.,* 105 N. Y. 97; Morawetz on Corp. §§ 31, 1023; *S., etc., Co.* v. *Thacher,* 11 N. Y. 107; *Minor* v. *Mechanics' Bk.,* 1 Pet. 46; *S. & A. R. R. Co.* v. *Ezell,* 14 S. C. 281; *Hammond* v. *Straus,* 53 Md. 1; *Mitchell* v. *R. R. R. Co.,* 17 Ga. 574.) The principles underlying the relations of the corporation to the state preclude a grant on condition precedent. (*Stuyvesant* v. *Davis,* 9 Paige, 431; 6 Bar. & Cres. 519; *Parmalee* v. *Oswego & Syracuse R. R. Co.,* 6 N. Y. 80; *Beach* v. *Nixon,* 9 id. 35; 2 Black. 153; *C. L. Ins. Co.* v.

*Needles,* 113 U. S. 580; 2 Waterman on Corp. 820; *People*
v. *K.,* etc., *Co.,* 23 Wend. 205; *Schulenberg* v. *Harriman,*
21 Wall. 60; *United States* v. *Repentigny,* 5 id. 267; *People*
v. *B.,* etc., *Co.,* 23 Wend. 234, 235; *King* v. *Pasmore,* 3 T. R.
241; Morawetz on Corp. § 1029.) In case of default the
state may exercise the reserved power, or compel an observance
of the terms of the charter, as it elects. (*Pratt* v. *N. Y.,* etc.,
*Co.,* 55 N. Y. 511; *Ludlow* v. *N. Y.,* etc., 12 Barb. 440; *Clark*
v. *Jones,* 1 Denio, 517; *Canfield* v. *Westcott,* 5 Cow. 270;
*N. Y. & N. H. R. R. Co.* v. *Schuyler,* 34 N. Y. 85; Taylor
on Priv. Corp. [2d ed.] 451; *People* v. *Albany & Vt. R. R.
Co.,* 24 N. Y. 261–269; *Hathaway* v. *Payn,* 34 id. 109;
*Julius* v. *Bishop of Oxford,* 5 App. Cas. 223; Endlich on
Inter. Stat. § 312; *Messenger,* etc., v. *P. R. R. Co.,* 36 N. J. L.
413; *Buncombe Co. Comrs.* v. *Tommey,* 115 U. S. 128;
*People* v. *N. Y. C. & H. R. R. R. Co.,* 28 Hun, 549; *Sinking
Fund Cases,* 99 U. S. 721.) As the acts required were all to
be done subsequent to the vesting of the franchise, their non-
performance could only be enforced by the state, and the
defendant's status could not be questioned by these plaintiffs.
(*Nicoll* v. *N. Y. & E. R. R. Co.,* 12 N. Y. 121; *Schulenberg*
v. *Harriman,* 21 Wall. 60; *Duryee* v. *Mayor,* etc., 96 N. Y.
493.) The legislature could waive the default whether the
franchise vested or was contingent, and the Constitution had
no effect upon the charter. (*People* v. *Brooklyn, F. & C. I.
R. Co.,* 89 N. Y. 85; *In re Gilbert El. R. Co.,* 70 id. 361;
*Trustees* v. *Woodward,* 4 Wheat. 692.) A general law may
not limit, extend or vary the provisions of a special act, unless
such intent is clearly manifest. (*Matter of President,* etc., *of
Del. & Hud. C. Co.,* 69 N. Y. 209; *Matter of Comrs. of
Central Park,* 50 id. 493; *Bennett,* etc., v. *Peck,* 28 Hun,
447; *Village of Gloversville* v. *Howell,* 70 N. Y. 287; *People*
v. *Quigg,* 59 id. 83; *Baird* v. *Mayor,* etc., 96 id. 567; *State* v.
*Stoll,* 17 Wall. 436; Endlich on Inter. Stat. §§ 200, 209.) The
law abhors a forfeiture. (*People* v. *President,* etc., 9 Wend.
380.) It should, therefore, be avoided if possible, and as the
various consequences attending the duties prescribed by the

statutes discussed are penalties, they should not be enlarged by construction. (*State* v. *Baltimore, etc.*, 3 How. [U. S.] 545, 546; *Strong* v. *Stebbins*, 5 Cow. 210; *Myers* v. *Foster*, 6 id. 569.)

*Charles P. Daly* for appellant. The corporate franchise was not lost by the failure of the company to begin and complete the road within the time limited. (Angel & Ames on Corp. § 774; Taylor's Law of Priv. Corp. 457; Potter's Law of Corp. 704; Morawetz on Priv. Corp. § 1004; Green's Brice's Ultra Vires, C., 5; *People* v. *Manhattan Co.*, 9 Wend. 382; *King* v. *Armory*, 2 Term Rep. 566, 567; *Mickels* v. *Rochester City Bk.*, 11 Paige, 118; *Tower* v. *Hale*, 46 Barb. 365; *Adam* v. *Beach*, 6 Hill, 373; *Davis* v. *Gray*, 16 Wall. [U. S.] 220, 222, 223; *Schulenberg* v. *Harriman*, 21 U. S. 64, 65; *B. S. T. Co.* v. *City of Brooklyn*, 78 N. Y. 25, 524; *In re B. W. & C. R. R. Co.*, 75 id. 335; 72 id. 246; *Farnsworth* v. *Minn. & Co. R. R. Co.*, 92 U. S. 66, 67; *United States* v. *Repentigney*, 5 Wall. [U. S.] 211; *Finch* v. *Risley*, Popham's Rep. 53.) The legislature, where a franchise is subject to forfeiture may waive it, and it does so by enlarging the time within which the condition may be performed, or by subsequent legislative acts recognizing the continued existence of the corporation. (*People* v. *Manhattan Co.*, 9 Wend. 351; *People* v. *F. P. R. Co.*, 27 Barb. 451, 452; Taylor's Law of Priv. Corp. § 460; Morawetz on Priv. Corp. § 655.) The act extending the time for the completion of the road is not within the meaning of the provisions of the amended Constitution, a private or local bill granting the right to lay down railroad tracks, or authorizing the construction or operation of a street railroad. (*In re N. Y. E. R. R. Co.*, 70 N. Y. 338; *In re Gilbert El. R. R. Co.*, Id. 368; 9 Hun, 303; *People* v. *Petrea*, 92 N. Y. 140.) In respect to constitutional law, a doubtful construction is not sufficient, every presumption is in favor of constitutionality, and it is only in cases of clear departure from the fundamental law that any act of the legislature can be held to be unconstitutional.

(*Warner* v. *Beers*, 23 Wend. 166 ; *People* v. *Alberson*, 55 N. Y. 54, 55 ; *In re G. & El. R. R. Co.*, 70 id. 367, 368 ; *People* v. *Supervisor of Orange*, 17 id. 241.)

*James C. Carter* for appellant. Every presumption is in favor of the constitutionality of legislative acts. (*In re N. Y. El. R. R. Co.*, 70 N. Y. 327.) Conditions, whether prece-dent or subsequent, should attach to the estate granted, and to the whole of that estate. (1 Greenl. Cruise on Condi-tions, 469 ; *People ex rel. Crimmins* v. *McManus*, 34 Barb. 620 ; *Foot* v. *Stiles*, 57 N. Y. 399.) Conditions are not favored by the law, and hence they must be clearly expressed. (*Craig* v. *Wells*, 11 N. Y. 315, 320.) So far as the legislative requirements are conditions, they are conditions subsequent, and breaches of them have no direct effect to destroy the estate or right dependent upon them, although such breaches may be made the subject of an action to annul the franchise. (*In re N. Y. El. R. R. Co.*, 70 N. Y. 327.)

*Noah Davis* and *Henry H. Man* for respondents. The act of 1866 was both private and local. (*People* v. *O'Brien*, 38 N. Y. 103 ; *People* v. *Suprs.*, 43 id. 10 ; *People* v. *McConville*, 35 id. 449, 451 ; *Mayor, etc.*, v. *Colgate*, 2 Kern. 146 ; *People* v. *Hill*, 35 N. Y. 452 ; *C. & A. R. R. Co.* v. *M. L., etc., Co.*, At. Rep. 523.) The act of 1868 created a corporation within the definition of the Constitution (§ 3 of art. 8), and of the Revised Statutes (2 R. S. [Banks' 7th ed.] 153). (*Thomas* v. *Dakin*, 22 Wend. 9 ; *Warner* v. *Beers*, 23 id. 103 ; *Curtis* v. *Leavitt*, 15 N. Y. 1–55.) It was necessary that the corpora-tion should duly organize and commence business within one year after the passage of the act, no other time being pre-scribed by the act. (2 R. S. [Banks' 7th ed.] 153, § 7 ; 3 Barb. Ch. 237 ; 30 Barb. 26 ; 44 id. 631 ; *In re B. W. & M. R. Co.*, 72 N. Y. 245 ; 78 id. 524 ; 79 id. 454.) All the legislation which treats the organization under the sixth sec-tion of the act of 1868 as valid, and builds the subsequent railroad schemes upon it, must fall with that unconstitutional provision. (*In re B. W., etc., R. R. Co.*, 75 N. Y. 335, 339.)

The legislature, under the reserved right of the Constitution to alter, amend or repeal the charters of corporations, has no power to compel corporations created for one purpose to become corporations for a different purpose under pain of forfeiture of their charters. (Pierce on R. R. Corp. 459; *White* v. *S. & U. R. R. Co.*, 14 Barb. 559, 560; *Shield* v. *Ohio*, 95 U. S. 319, 324; *N. Y. C. Co.* v. *Mayor, etc.*, 104 N. Y. 1, 38.) A statute declaring that a railroad corporation and its functions shall cease by failure to comply with some requirements, executes itself, and there is no need of any action of state authorities. (*In re B. W. & N. R. R. Co.*, 75 N. Y. 335; 72 id. 245; *B. S. T. Co.* v. *Brooklyn*, 78 id. 524.) When a legislature proffers new powers to an existing corporation having well defined powers, even though they be in the line of its original authority, unless the act be so framed as to make itself a part of the charter or to impose the powers as imperative obligations, the option of the corporation may be exercised to accept or reject them, and this is done by complying or neglecting to comply with the conditions precedent, if any are contained in the act. (*Johnson* v. *H. R. R. R. Co.*, 49 N. Y. 455; *Clarkson* v. *H. R. R. R. Co.*, 12 id. 304; *P. & G. F. P. Co.*, 102 Penn. St. 123; 1 Wood's Railway Law, 87, 88, 102 and note 1.) The act of 1881 was nothing more nor less than an attempt to grant new powers by reviving dead powers, or powers which could not under any then existing law be exercised or used, and was, therefore, equivalent to, and was, creating such powers by new enactment. (*In re B., W. & E. R. R. Co.*, 75 N. Y. 335; 72 id. 245; 78 id. 524, 531; *Crocker* v. *Crane*, 21 Wend. 211; *Gray* v. *Farwell*, 81 N. Y. 600.) The act of 1886 is a private and local bill and is wholly void, under the provisions of the State Constitution. (Const. art. 3, § 18; *People* v. *O'Brien*, 38 N. Y. 193; *People* v. *Suprs.*, 43 id. 10; *In re El. R. R. Co.*, 70 id. 327, 349, 350; *Matter of B., W. & N. R. R. Co.*, 72 id. 335; 75 id. 335, 339; *Matter of B. S. T. Co.*, 78 id. 524.) For the purpose of availing themselves of the constitutional question above considered, it is not essential that the plaintiffs shall own a fee

in Broadway and Madison avenue, or in their vaults. It is enough that they are owners of property bounded on the public streets. (Const. art. 3, § 18.) Plaintiffs are not obliged to stand alone on their rights as abutting property owners. They have vested rights of property in the street, and in the vaults in front of their respective lots, which they may possess and defend against all comers until lawfully taken by constitutional enactments and proceedings. (*Lahr* v. *Met. El. R. Co.*, 104 N. Y. 268, 290; *Story* v. *N. Y. El. R. Co.*, 90 id. 122; *In re El. R. Co.*, 70 id. 327; *In re Gilbert El. R. Co.*, Id. 361; *In re El. R. Co.*, 38 Hun, 438, 460; *Milhau* v. *Sharp*, 27 N. Y. 611, 624; *Story Case*, 90 id. 161; *Good-title* v. *Alker*, 1 Burroughs, 143; *McCarthy* v. *City of Syracuse*, 46 id. 199; 3 Kent's Com. [12th ed.] 573; *Robert* v. *Sadler*, 104 N. Y. 229; *Ely* v. *Campbell*, 33 How. Pr. 277.)

*John F. Dillon* for respondents. Public grants of franchises, and especially corporate grants of this character, must be construed strictly; and any fair doubt upon the whole enactment, as to the nature or extent of the grant, is to be resolved against the grantee or company. (*Charles River Bridge Case*, 11 Pet. 420, 545; *Cayuga Bridge Co.* v. *Magee*, 2 Paige, 116; 6 Wend. 85; *Sharp* v. *Speir*, 4 Hill, 76; *Mayor, etc.*, v. *B. & S. A. R. R. Co.*, 97 N. Y. 275; *N. Y. C. Co.* v. *Mayor, etc.*, 104 id. 1, 38.) The defendant had no existence or powers as a railway corporation *quoad* Broadway and Madison avenue when the act of 1866 was passed; and that act being a local and private act, passed after and subject to the constitutional amendment, "could not legislate it into life" or confer such powers upon it. (*In re B., W., etc., R. R. Co.*, 75 N. Y. 335, 339.) The right to enter upon the streets of a city and lay down railroad tracks is also a franchise, since it can only come from legislative grant, and is entirely distinct from the franchise to be or to exist as a corporation. (*N. Y. D. Co. Case*, 107 N. Y. 54.) The statutory requirements are conditions precedent to the acquisition by the defendant of any right to lay down railroad tracks. (*Olney* v. *Pearce,*

1 R. I. 292; *Riddle* v. *Bedford Co.*, 7 S. & R. [Pa.] 392; *N. Y. C. Co. Case*, 104 N. Y. 1, 23.) The provisions as to capital stock are conditions precedent to acquiring the right to lay down railroad tracks. (Morawetz on Corp. § 781; *Barry* v. *Morgan*, 1 Sandf. Ch. 305, 306; Lindley on Partnership, 612, 626; *Crocker* v. *Crane*, 21 Wend. 211, 218; *Gray* v. *Farwell*, 81 N. Y. 600; *U. Ins. Co.* v. *Hoge*, 21 How. [U. S.] 35, 63; Brice's Ultra Vires [Am. ed.] 153; *Minor* v. *Bk. of Alexandria*, 1 Pet. 46; *S., etc., P. R. Co.* v. *Thatcher*, 11 N. Y. 102; *El. R. Cases*, 70 id. 327; 90 id. 122; *In re Gilbert El. R. Co.*, 70 id. 361; *In re B., W. & N. R. Co.*, 72 id. 245; 75 id. 335; 81 id. 69; *Trask* v. *McGuire*, 18 Wall. 391; *St. Louis, etc., Co.* v. *Berry*, 114 U. S. 465, 475; *Memphis, etc., Co.* v. *Comrs.*, 112 id. 609; *In re B., etc., R. R. Co.*, 75 N. Y. 335; *N. Y. Dist. Ry. Case*, 107 id. 42.)

*Joseph S. Auerbach* for respondents. The New York Arcade Railway Company, if it ever became clothed with railway powers, became subject to the duties and liabilities of the general railroad act of 1850. (Laws of 1850, chap. 140, § 47; Laws of 1867, chap. 775; *Kerr* v. *Dougherty*, 79 N. Y. 327.) Section 47 of the general railroad law, as amended, is an express limitation upon original grant of corporate power, and failure to comply with its provisions works *ipso facto* an absolute forfeiture. (*In re B. & W. R. R. Co.*, 72 N. Y. 245; 81 id. 76; 75 id. 335; *B. T. Co.* v. *City of Brooklyn*, 78 id. 524.) The provisions of section 47 of the general railroad act, as amended, and the provisions of the act of 1874, must, if possible, be read and construed together. (*B. S. T. Co.* v. *City of Brooklyn*, 78 N. Y. 531.) Repeal of any statute by implication is not favored by our courts. (*Stranahan* v. *S. V. R. R. Co.*, 84 N. Y. 312; *People ex rel. Kingsland* v. *Palmer*, 52 id. 83; *Dr. Foster's Case*, 11 Co. 63; *Weston's Case*, Dyer, 347; 10 Mod. 118; Bac. Abr. Statute [D], Dwarris, 673–675; *Hayes* v. *Symonds*, 9 Barb. 260; *Marx* v. *New York*, 9 N. Y. 574; *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 666; *Tenn. R. R. Co.* v. *Canal Comrs.*, 21

Penn. St. 22; *Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *Mayor, etc.*, v. *Broadway, etc., R. R. Co.*, 97 id. 281; *Ruggles* v. *Illinois*, 108 U. S. 526.) The conclusion that the corporate existence and powers of this defendant have ceased are in harmony with the general policy of the law and with the letter and spirit of the Constitution. (*Matter of El. R. Co.*, 70 N. Y. 349–350.) Corporate existence and rights are necessary to justify this action, and any owner feeling aggrieved may deny this corporate right. (*In re B. W. & N. R. Co.*, 72 N. Y. 249; *B. S. T. Co.* v. *City of Brooklyn*, 78 id. 531.)

EARL, J. The sole question for our determination is whether the defendant has legal authority to construct and operate a railway under Broadway and Madison Avenue in the city of New York. The defendant traces its corporate existence to the act chapter 842 of the Laws of 1868, entitled "An act to provide for the transmission of letters, packages and merchandise in the cities of New York and Brooklyn and across the North and East rivers by means of pneumatic tubes, to be constructed beneath the surface of the streets and public places in said cities and under the waters of said rivers." The first section of the act authorized and empowered Alfred E. Beach and other persons named, and their assigns "to lay down, construct and maintain one or more pneumatic tubes in the soil beneath the surface, squares, avenues and public places in the cities of New York and Brooklyn and under the bed of the waters of the East river between the said cities, and also under the bed of the waters of the North river from the city of New York to the shore of New Jersey, but at such depth as not to interfere with navigation; and to convey letters, parcels, packages, mails, merchandise and property in and through said tubes for compensation, by means of vehicles to be run and operated therein by the pneumatic system of propulsion; and to the end that the public convenience may be promoted in the operation of the said vehicles, the said persons and their assigns are also hereby authorized and required to erect upon the sidewalks of the said streets, squares, avenues and public places suitable

ornamental lamp-posts, boxes, pillars or receptacles, not exceed-
ing thirty inches in diameter, connected with said pneumatic
tubes for the deposit of letters, packages and property to be
transmitted therein. " And it provided that the tubes should
not extend through any vault, nor under any sidewalk front-
ing on private property, without the consent of the owners of
such private property, and compensation to them, which should
be ascertained and determined, in case the parties could not
agree, in the manner provided by the general railroad act of
1850. Section 2 provided that the pneumatic tubes should be so
constructed as to have a mean interior diameter of not exceed-
ing fifty-four inches. Section 5 authorized the persons named
in the act to hold a meeting and determine the terms and con-
ditions upon which the powers, privileges and franchises con-
ferred by the act might be transferred to a corporation to be
organized as provided in the next section; and section 6 pro-
vided that, in case the persons attending the meeting named
in the prior section should so determine, they might organize
themselves into a corporation in the manner specified in the
general manufacturing act of 1848, and the acts amendatory
thereof, "for the purpose of constructing and maintaining the
pneumatic tubes aforesaid and using and operating the same
as hereinbefore authorized; " and that the corporation so organ-
ized shall " possess all the powers and privileges conferred by
said acts and be subject to all the duties and obligations
imposed therein, not inconsistent with the provisions of
this act."

In August, 1868, in pursuance of the powers conferred by
the act, the persons therein named organized themselves into
a corporation by the name of " The Beach Pneumatic Transit
Company;" and in the certificate executed and filed by
them, they declared that the object of the corporation was
" to construct and operate pneumatic railroads in the cities of
New York and Brooklyn and under the waters of the North
and East rivers, and to exercise all the powers, privileges and
franchises conferred upon said corporation by the act " of
1868; that the capital stock should be $5,000,000, and that

the corporation should continue in existence for the term of fifty years. The certificate could give the corporation no greater powers than were conferred by the act of 1868, and to that act we must look for the scope and measure of its powers. The act did not confer railroad powers upon the corporation, and did not subject it to any of the railroad acts, except for the purpose of ascertaining the compensation to be paid to the owners of property interests in the streets. It authorized the formation of a manufacturing corporation, with the incidents, powers and duties of such a corporation, so far as they were consistent with the purposes of the act. The corporation formed was, in fact, a manufacturing corporation, not, however, with the general power to engage in any manufacturing business, but for the sole purpose of constructing, maintaining, using and operating the pneumatic tubes. The formation of such a corporation was a matter fairly embraced within the title of the act. It was an appropriate instrumentality to accomplish the purposes of the act, and in no sense a new and independent subject. The legislature having authorized the construction and operation of the pneumatic tubes, could, in the act itself, have created the corporation, or could have authorized its organization under any of the general laws of the state adapted to the formation of any business corporation; and the formation of such a corporation would be germane to the main purpose of the act as indicated by its title. While the general manufacturing laws regulated the corporation as to its mode of existence, its manner of action and its corporate life and being generally, yet all its powers and duties related and were confined to the construction, maintenance, use and operation of the pneumatic tubes; and, therefore, section 16 of article 3 of the Constitution, which provides that " no private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title," was not, as contended on behalf of the plaintiffs, violated.

What do the words pneumatic tubes mean? They convey

to our minds no other meaning than that of tubes for the transmission of parcels operated by atmospheric pressure applied within the tubes. The parcels may be transmitted outside the tubes upon vehicles attached to a piston operated within the tubes by atmospheric pressure, or they may be transmitted within the tubes by atmospheric pressure applied behind them. But they are in no sense railways. Such a tube may contain vehicles placed upon wheels, and the wheels may run upon rails or in grooves, and yet the structure could not, according to the popular sense, or any legal sense, be what is generally known as a railway. The tubes may be so constructed that in a technical or scientific sense the structure might be called a railway; and so, too, any structure upon which vehicles may be moved upon rails, however peculiar or small, may in some limited sense be called a railway, and yet it may not be a railway within the meaning of the Constitution and the general laws of the state. When they speak of railways they always mean railways either for the general carriage of property, or of passengers, or of both; and a railway which may be operated in small pneumatic tubes by atmospheric pressure for the transmission of small packages is not within such meaning.

Such was the character and status of the corporation organized under the act of 1868. That act was amended by the act, chapter 512 of the Laws of 1869, entitled "An act supplementary to chapter 842 of the Laws of 1868, in relation to carrying letters, packages and merchandise by means of pneumatic tubes in New York and Brooklyn;" but there is nothing in that act pertinent to the present discussion.

From 1868 to the commencement of this action in 1886, so far as this record discloses, nothing whatever was done by the corporation except to change its name several times and to procure acts of the legislature purporting to enlarge its powers and extend its corporate life. No pneumatic tubes have been constructed, and it is a fair inference, from the admitted facts, that the system for the pneumatic transmission of property

was before the year 1873 found to be impracticable. It had been tried in various parts of Europe, but had proved a failure, and for the general transmission of property or passengers was in the year 1873 nowhere in use. (Chambers' Encyclopedia, titles, "Atmospheric Railway" and "Pneumatic Dispatch;" Encyclopedia Britannica, title, "Atmospheric Railway;" Appleton's Cyclopedia, title, "Atmospheric Railway;" Johnson's Cyclopedia, title, "Pneumatic Transmission.")

In 1873 the persons interested in the corporation, as we may infer, being aware of its insufficiency for any practical purpose, concluded to procure an enlargement of its powers, and a radical change in its character and purposes, and, therefore, they obtained the passage of the act (Chap. 185), entitled "An act supplemental to and amendatory of chapter 842 of the Laws of 1868, an act entitled 'An act to provide for the transmission of letters, packages and merchandise in the cities of New York and Brooklyn, and across the North and East rivers by means of pneumatic tubes, to be constructed beneath the surface of the streets, squares, avenues and public places in said cities, and under the waters of said rivers,' passed June 1, 1868; and of chapter 512 of the Laws of 1869, entitled 'An act supplementary to chapter 842 of the Laws of 1868, in relation to carrying letters, packages and merchandise by means of pneumatic tubes in New York and Brooklyn, and to provide for the transportation of passengers in said tubes.'" The last phrase of this title "and to provide for the transportation of passengers in said tubes" did not appear in the title of the act of 1869, and yet in the act in all its stages through the legislature, as approved by the governor, filed in the office of the secretary of state and printed in the Session Laws, the quotation marks are so placed as to make the phrase appear to be part of that title. The title of the act, therefore, was well calculated to deceive any persons to whose attention it came while the act was under consideration in the legislature. But we will assume that this title is to have the same force and effect as if that of the act of 1869 had been properly quoted, and then the only addition to the titles of the prior

acts is the final phrase above quoted, and the only subject expressed in the title is the transportation of property and passengers in pneumatic tubes. This title is assailed by the plaintiffs as not in compliance with section 16 of article 3 of the Constitution above quoted. A particular examination of the provisions of the act is, therefore, necessary. The first section provides that it shall be lawful for the Beach Pneumatic Transit Company " to construct, maintain and operate an underground railway for the transportation of passengers and property," under Broadway and Madison avenue, " by means of tubes of enlarged interior diameter sufficient for the construction of a railway or railways therein, and for the running of cars and the carrying of passengers therein; and also to construct, in connection with said tubes, two or more tracks of railway with the necessary turnouts and stations for the ingress and egress and accommodation of passengers, and for the receipt and discharge of packages and freight, and said company shall have the right and privilege, subject to the approval of the board of engineer commissioners hereinafter provided for, to make connection with the Harlem and connecting railroads at any point deemed best, at or above Forty-second street, and also to make connection with the Hudson River railroad at any point northerly of Fifty-ninth street." Section 2 provides that the passenger tubes shall, as far as practicable, follow the center line of the streets, and shall not occupy in the aggregate a greater space than thirty-one feet in width by eighteen feet in height, exterior measurement, and that they shall be laid and constructed under the supervision of a board of three engineer commissioners, whose duty it is to see that the " passenger tubes and railways" are constructed in a thorough and workmanlike manner ; and that they shall constitute a board of commissioners, a majority of whom " shall determine whether the pneumatic system or other motive power shall be adopted by said corporation for the propulsion of the cars running within said passenger tubes." Section 4 authorizes the corporation to acquire the title to such real estate or interest therein as may be necessary to enable it to .

construct, operate and maintain " said tubes and railways," and to construct and maintain the proper platforms, stations and buildings at such points along the route of its tubes as may be convenient and suitable for the ingress and egress of its passengers, and for the receipt and discharge of freight and packages and necessary for the successful operation of " said tubes and railway and for the proper connections between said tubes and railway, platform, stations and buildings;" and in case the corporation is unable to agree with the owners of real estate for the purchase and use thereof, it is authorized to acquire the title to the same in the manner provided in the general railroad act of 1850; and in all cases the use of the streets, avenues, squares, grounds and public places, and the right of way under the same for the purpose of " said tubes and railway or railways therein," shall be considered and is declared to be a public use. Section 5 provides that " it shall be lawful for said corporation to convey passengers on said railway or railways through said tubes for hire," and regulates the rate of fare that may be charged. Section 6 provides that the corporation shall commence active operations in the construction of its works within six months after the passage of the act, and shall complete the section of passenger tubes with two railway tracks from Bowling Green to Fourteenth street within three years, and shall complete the remainder of the passenger tubes as authorized within five years thereafter. Section 7 provides that the corporation shall not construct any station, depot or other building, or work above the surface of any land belonging to the city of New York, either in its own right or as trustee, without the consent of the mayor and aldermen, but that nothing in the act shall be construed to authorize the mayor and aldermen to donate, lease or sell any portion of any of the ground surface of any public park in the city beyond what may be absolutely necessary for the exit from and entrance to the railroad. Section 9 provides that the corporation shall possess " all the powers and be subject to all the duties and liabilities imposed on railroad corporations

by the laws of this state, not inconsistent with the charter of this company or the purposes of its incorporation."

Here we read nothing of pneumatic tubes or of propulsion by atmospheric pressure, nor even of pneumatic railways. We read of passenger tubes; but we must not be deceived by the juggle of words. We find authorized a grand underground railway not less than fifteen miles long, with two or more tracks, turnouts, platforms, stations, buildings and other appurtenances, with power to connect with surface steam railroads, to be operated through passage-ways called tubes, eighteen feet in height and thirty-one feet in width exterior measurements; in fact tunnels which could not be operated by atmospheric pressure. What was before a manufacturing corporation was converted into a railroad corporation, or, at least, had superadded the powers, privileges, duties and liabilities of railroad corporations under the general laws of the state, with authority, by the consent of the engineer — commissioners, to use, for the movement of its cars, horses, steam or any other motive power. The construction of such a railway by such a corporation is certainly a subject not expressed in the title of the act. The only subject there indicated is the transportation of passengers and property through pneumatic tubes by atmospheric pressure. A title purporting that an act provides for pneumatic transportation would not be sufficient for an act authorizing the construction and operation of a horse railway or a steam railway, as a title purporting that an act authorizes a line of omnibuses for the transportation of passengers would not be sufficient for an act authorizing the construction of a railway for the same purpose.

The constitutional provision referred to has been deemed by statesmen and jurists, *conditores legum*, of so much importance that it is found in the fundamental laws of most of the states. Its purpose is to prevent fraud and deception by concealment, in the body of acts, subjects not by their titles disclosed to the general public and to legislators who may rely upon them for information as to pending legislation. When the subject is expressed, all matters fairly and reasonably con-

nected with it, and all measures which will or may facilitate its accomplishment, are proper to be incorporated in the act and are germane to the title. The title must be such, at least, as fairly to suggest or give a clue to the subject dealt with in the act, and unless it comes up to this standard it falls below the constitutional requirement. (*Mayor, etc.,* v. *Colgate,* 12 N. Y. 146; *People* v. *Hills,* 35 id. 449, 452; *Matter of New York, etc., Bridge,* 72 id. 527; *Matter of Application of Department of Public Parks,* 86 id. 439; *People* v. *Whitlock,* 92 id. 191; *Matter of Knaust,* 101 id. 188; Cooley's Constitutional Limitations, 141.) Here the only subject suggested by the title is the transportation of passengers and property through pneumatic tubes, by atmospheric pressure, and everything appropriate and germane to that subject could be provided for in the act. But a person reading the title alone would have no clue whatever to the great railway scheme actually authorized by the act; and so the corporators themselves evidently regarded the act, for, finding that the corporation had outgrown its name, "The Beach Pneumatic Transit Company," they, by the act chapter 503 of the Laws of 1874, had it changed to the "Broadway Underground Railway Company;" and in that act what were before called "tubes" are called "tunnels;" and ten years later, by an order of the proper court, the name was again changed to the "New York Arcade Railway Company." While by the acts of 1874, chapter 454 of 1881 and chapter 312 of 1886, the charter of the corporation was amended and its powers greatly enlarged, pneumatic tubes, propulsion by atmospheric pressure and pneumatic railways are nowhere mentioned, and all that is left as a result of all the legislation is a grand scheme for underground railways operated by any motive power except such as shall emit "smoke, gas or cinders," which, if carried into effect, would, doubtless, be one of the marvels of the world. But if it is as desirable and safe as it is marvelous, it should be placed upon a constitutional basis and make an undisguised appeal upon its merits for the public sanction.

Our conclusion, therefore, is that the act of 1873 for the insufficiency of its title is unconstitutional and void, and hence all subsequent legislation based upon that act must fall with it. When the act of 1886 was passed, under which the defendant proposes to lay down its tracks and to construct its underground railways, it had no power to construct an underground railway for the transportation of passengers and general freight through tunnels, and, therefore, that act is in conflict with section 18 of article 3 of the Constitution, which forbids the legislature to pass a private or local bill granting to any corporation the right to lay down railroad tracks or to construct a street railroad except upon conditions mentioned in that section. (*Matter of N. Y. District R. Co.*, 107 N. Y. 42.)

We need go no further. The conclusion already reached renders it unnecessary to solve the various other questions argued with much ability and learning by the able counsel who appeared before us.

The judgment should be affirmed, with costs.

GRAY, J. I concur with EARL, J., in his opinion that the act of 1873 was unconstitutional and void, in that it failed to comply with section 16 of article 3 of the Constitution. But I am further of the opinion, assuming that the act of 1873 was valid, and that there was an acceptance of and a valid compliance with its conditions, and that there was a waiver of causes of forfeiture by the passage of the act of 1886, that the latter act was in violation of the provisions of the constitutional amendment, which went into effect on January 1, 1875. By that amendment the legislature was inhibited from passing a private or local bill, granting to any corporation the right to lay down railroad tracks, or any exclusive privilege, immunity or franchise whatever. The act of 1886, under which the appellant claims to have acquired its present rights, cannot, in my view of what it grants, be upheld as legislation, which merely regulates the exercise of powers formerly granted to and possessed by an existing corporation. It went far beyond that. It was, in fact, a new grant of sub-

stantive rights, in addition to and differing from what might have been claimed under the act of 1873. By the act of 1873 the company would have had the right to construct a railway in tubes, which should not occupy a greater space than thirty-one feet in width, by eighteen feet in height, exterior measurements. The company could not have approached within two feet of the curb line, nor within eighteen feet of the building line. These restrictions must be deemed to be important limitations and wholesome provisions, designed for the protection of the rights of the abutting property owners and to secure to the public the rightful enjoyment of the streets as such. By the act of 1886 they would possess the right to excavate for their railways a space of forty-four feet, inside measurements, in width and without any limitation as to depth. They might construct railways, without the use of tubes or tunnels, and use any motive power, which would not permit of the emission of smoke, gas or cinders.

I think we have here a pretty wide departure from the rights and powers to be enjoyed under the act of 1873. The pneumatic tube, of a diameter of fifty-four inches, for the transportation of packages and merchandise, authorized under the original charter of 1868, and which was transmuted by the act of 1873 into a tubular passenger and freight railway, has now wholly disappeared, and in its place appears a scheme for what amounts to a complete occupation of the street for railway purposes; except so far as it leaves a roof over the excavation to take the place of the street surface. This grant of a right to excavate the street, to an extent practically unlimited, and the permission to abandon tubes and to construct railways in the excavation, are matters of grant too serious in their nature and consequences, under the circumstances of the case, to be passed over as in mere regulation of an existing franchise. To allow such legislation is, in my opinion, to nullify the beneficial and protective objects aimed at by the constitutional amendment of 1875.

Under the guise of an amendment, there was a legislative grant to this company of franchises and privileges beyond

any naturally following upon, or flowing from those granted under the act of 1873 ; not in harmony with the spirit of that grant, and, of necessity, exclusive in their nature.   It, therefore, fell within the prohibition of the constitutional amendment.    When the People have, by amending the Constitution, restricted the powers of their representatives in the legislature to pass private or local bills, which grant the right to lay down railroad tracks, or any exclusive privileges or franchises to a corporation, the courts should see to it that the constitutional limitation is not evaded, under the pretense of an amendment of the charter.   They should scrutinize the legislative act complained of ; not with the idea of seeking the way to a construction adverse to its constitutionality, but rather to uphold it, if possible.   But if the scrutiny reveals a real and serious violation of the constitutional provisions, they must condemn the act as invalid.

It is said, however, that a scope of action is offered for the legislature, with respect to corporations already in the possession of corporate rights, acquired under statutes passed before the adoption of the constitutional amendment.    As a general proposition this is true.   Conceding to the legislature its full measure of authority to legislate, under the general grant of power by the Constitution of the state, we hold that such authority, when now exercised by a private bill in behalf of a corporation, cannot, under the guise of measures for the regulation of the exercise of the corporate powers and franchises, be upheld by the court, when, by a practical construction, the act permits what the amendment to the Constitution prohibits.   A regulation of these powers and franchises, when the act touches them so as to alter them, means their restriction, rather than their enlargement.   If enlargement of powers may be sometimes consistent with the constitutional limitations, it may not go to the extent of trenching on the territory of private and public rights, over which the Constitution was plainly intended to operate in its limitations.   When enlargement of corporate powers becomes indistinguishable from a grant of new substan-

tive rights, within the purview of the section in question, then the mischief is accomplished, to prevent which the constitutional amendment was designed.

*In the Matter of the Gilbert Elevated Railway Company* (70 N. Y. 361), CHURCH, Ch. J., in discussing the changes of structure, etc., made by the commissioners under the provisions of the Rapid Transit Act, said the changes were restrictive in their character. " By the charter the whole street was to be covered by the structure; by the conditions imposed only a portion of some streets could be occupied." And he says, in that connection: " I cannot accede to the proposition that any change in the structure and in the manner of occupying the streets, however restrictive upon the company, or beneficial to the public in the use of the streets, constitutes a fresh grant of the right to lay down railroad tracks. It is a misnomer to call such restrictions *grants* of any *right* whatever. As well might the cutting down of a fee to a life estate be termed a grant of land." Again he says: " No exclusive right or franchise was granted to the respondent corporation upon any construction of the clause. Every substantial right existed before the passage of the act, and the conditions imposed, embracing changes of structure and manner of occupying streets, should be regarded as restrictive of existing rights, and not *grants* of rights or franchises within the constitutional sense. * * * This series of amendments designed to restrict the powers of the legislature in matters of detail, under general phrases and undefined words, is experimental in this state. They must be sustained and applied by a rational and practical construction, so as to subserve the purposes intended, and prevent the evils designed to be remedied; but not, by an artificial and technical construction, to extend their application to cases never contemplated."

I think the meaning of the decision is clear. If the legislative act operates upon a charter in the direction of a regulation, an adjustment, or a restriction of powers possessed, it could not be objectionable. Within its reserved powers the legislature may, at all times, amend or alter the charter, but the

constitutional amendment will not permit it by a private bill to make any new grant of rights, comprehended within those specified by the amendment. I do not think that it can be said, in the present case, that every substantial right given by the act of 1886 existed previously.

For the reasons I have briefly given, I think the act of 1886 practically gave to this corporation a right to lay down railroad tracks, which it could not have exercised under the act of 1873, and, also, gave what are practically exclusive privileges. I think it contravened the Constitution, in the letter and in the spirit, and is, therefore, void.

All concur with EARL, J.; RUGER, Ch. J., DANFORTH and PECKHAM, JJ., concur with GRAY, J.

Judgment affirmed.