[45 NYS3d 22]

NYC C.L.A.S.H. et al., Appellants, v City of New York et al., Respondents.

First Department, January 3, 2017

### APPEARANCES OF COUNSEL

*Joshpe Law Group LLP*, New York City (*Edward A. Paltzik* of counsel), for appellants.

*Zachary W. Carter, Corporation Counsel*, New York City (*Benjamin Welikson* and *Richard Dearing* of counsel), for respondents.

### OPINION OF THE COURT

SAXE, J.

In this declaratory judgment action, plaintiffs, NYC C.L.A.S.H.* (CLASH) and Russell Wishtart, seek a declaration that Local Law No. 152 (2013) of City of New York is unconstitutional. Local Law 152 amended Administrative Code of City of New York, title 17, chapter 5, the "Smoke-Free Air Act," to add regulation of electronic cigarettes, or e-cigarettes. Plaintiffs contend that Local Law 152 violates the so-called "one-subject rule" established by New York Constitution, article III, § 15, Municipal Home Rule Law § 20 (3), and New York City Charter § 32.

Smoking in public places in New York City was first regulated by the enactment of Local Law No. 2 (1988) of City of New York, which added chapter 5 to title 17 of the Administrative Code (§§ 17-501-17-514), entitled the "Clean Indoor Air Act." In 1995, the City Council enacted Local Law No. 5 (1995) of City of New York, which renamed chapter 5 the "Smoke-Free Air Act" and expanded the restrictions on smoking in public areas, adding recreational areas and children's institutions (*see* Administrative Code §§ 17-501-17-504). In 2002, chapter 5 of

---

* New York City Citizens Lobbying Against Smoker Harassment.

title 17 of the Administrative Code was further amended by Local Law No. 47 (2002) of City of New York, which further extended restrictions on smoking, eliminating smoking in restaurants and bars, with certain exceptions, and prohibiting smoking in day care centers and elementary and middle schools. Chapter 5 was amended yet again by Local Law No. 50 (2009) of City of New York (regulating smoking in outdoor areas of hospitals) and Local Law No. 11 (2011) of City of New York (public parks and beaches).

Local Law No. 152 (2013) of City of New York further amended chapter 5 of Administrative Code title 17, by adding to the law the regulation of the use of electronic cigarettes in addition to the regulation of smoking tobacco cigarettes. For example, Administrative Code § 17-503 was amended as follows:

> "Prohibition of smoking *and use of electronic cigarettes*.
>
> "a. Smoking [is]*, and using electronic cigarettes, are* prohibited in all enclosed areas within public places" (additions to the original text are in italics, removal of the original text is bracketed).

Before enacting this law, the City Council held a series of hearings, at which it heard testimony from, among others, public health advocates, representatives of electronic cigarette manufacturers, and members of the public, including plaintiff Wishtart and the founder of plaintiff NYC CLASH. The committee report issued following the hearings explained that electronic cigarettes are devices that contain a liquid containing nicotine, as well as varying compositions of flavorings, propylene glycol, glycerin, and other ingredients, that is heated into a vapor that the user inhales. Although they have been marketed as a safer alternative to traditional cigarettes since they were introduced in the U.S. in 2006, the U.S. Food and Drug Administration (FDA) and the Centers for Disease Control (CDC) have expressed concern about e-cigarettes' safety for the user and non-user, samples having tested positive for carcinogens, as well as the concern that they may lead to the use of other nicotine products by young people (*see* CDC Office on Smoking and Health, E-cigarette Information [Nov. 2015], https://www.cdc.gov/tobacco/stateandcommunity/pdfs/cdc-osh-information-on-e-cigarettes-november-2015.pdf; U.S. Food & Drug Administration, The Facts on the FDA's New Tobacco

Rule, https://www.fda.gov/ForConsumers/ConsumerUpdates/ucm506676.htm#safer [last accessed 12/12/16]).

Plaintiffs' contention—that the enactment of Local Law 152 violated the one-subject rule by impermissibly lumping into the same law two subjects, smoking traditional cigarettes and smoking e-cigarettes—is based on a fundamental misapprehension of that rule.

The one-subject rule contained in article III, § 15, was first included in the New York Constitution in 1846, "as a result of the success of Aaron Burr in persuading the Legislature to grant him a charter for a water company which had hidden among its provisions a clause enabling him to found a bank" (*Burke v.Kern*, 287 NY 203, 213 [1941], citing *Matter of Clinton Ave.*, 57 App Div 166 [2d Dept 1901], *affd* 167 NY 624 [1901]). As is described in greater detail in the Second Department decision that the Court of Appeals cited in *Burke v Kern*, Aaron Burr wanted to form a bank to compete with the Bank of New York, which was owned and controlled by Alexander Hamilton, but the Federalist-controlled legislature would not grant him a charter for a bank. He got around that obstacle by asking the legislature for a charter for the Manhattan Company, a business ostensibly formed to supply desperately needed clean drinking water in New York, and including in his charter proposal an authorization for the company to raise capital of $2,000,000 and a provision allowing any surplus capital to be used "in any way not inconsistent with the laws and Constitution of the United States or of the State of New York" (57 App Div at 169). The charter, in this form, was granted, and Aaron Burr went on to use capital to cause the Manhattan Company to function primarily as a bank. So, what appeared to be an act authorizing a water company actually created what became "one of the strongest banking institutions of the city of New York" (57 App Div at 168-169, citing 1 Jabez D. Hammond, The History of Political Parties in the State of New York 325 [1850]; *see also* John Kendrick Bangs, *A Historic Institution: The Manhattan Company-1799-1899*, Harper's New Monthly Magazine, vol XCVIII at 971-976 [May 1899]).

The one-subject rule was created as a result. As the Court of Appeals explained in *Economic Power & Constr. Co. v City of Buffalo* (195 NY 286, 296 [1909]),

> "The [one-subject] provision of the Constitution was adopted to check and prevent certain evils of

legislation . . . . Its object was twofold. First, to prevent a combination of measures in local bills and secure their passage by a union of interests commonly known as 'log-rolling.' Second, to require an announcement of the subject of every such bill to prevent the fraudulent insertion of provisions upon subjects foreign to that indicated in the title. It was intended that every local subject should stand upon its own merits, and that the title of each bill should indicate the subject of its provisions so that neither legislators nor the public would be misled or deceived" (emphasis omitted).

The problem of legislative "logrolling" as referred to in the above-quoted language is "the uniting of various objects having no necessary or natural connection with each other, in one bill, for the purpose of combining various pecuniary interests in support of the whole, which could not be combined in favor of either by itself" (*Conner v Mayor of City of N.Y.*, 5 NY 285, 293 [1851]).

However, the Constitution's one-subject rule applies only to bills passed by the state legislature, since by its terms it relates only to "[t]he legislative power of this state" (NY Const, art III, § 1). It is therefore inapplicable in the present case (*see Matter of Mitrione v City of Glens Falls*, 14 AD2d 716 [3d Dept 1961]).

The equivalent statutory provisions that directly govern local laws are those contained in the subsequently enacted provisions of the New York City Charter and the Municipal Home Rule Law. Municipal Home Rule Law § 20 (3) states that "[e]very such local law shall embrace only one subject. The title shall briefly refer to the subject matter"; the New York City Charter provides that "[e]very local law shall embrace only one subject. The title shall briefly refer to the subject-matter" (NY City Charter § 32).

Local Law 152 does not violate those requirements. It was titled, "A Local Law to amend the administrative code . . . , in relation to the regulation of electronic cigarettes." The regulation of electronic cigarettes was the only subject of the bill and that subject was clearly stated in its title. Therefore, the bill met the transparency requirement of the one-subject rule and adequately apprised the City Council and members of the public of its contents and purpose (*see Burke v Kern*, 287 NY at 213; *Conner v Mayor of City of N.Y.*, 5 NY at 292-293).

Plaintiffs' reliance on *Astor v New York Arcade Ry. Co.* (113 NY 93 [1889]) in support of their interpretation of the one-

subject rule is misplaced. The *Astor* Court disapproved an 1873 law that, by its title, purported merely to supplement an 1868 law, but actually granted far greater authority to the defendant to construct an entirely different and far more substantial infrastructure—an underground railway system—than that authorized in the 1868 law. The existing local law, enacted in 1868, was "to provide for the transmission of letters, packages, and merchandise in the cities of New York and Brooklyn . . . by means of pneumatic tubes, to be constructed beneath the surface" (*id*. at 102, quoting L 1868, ch 842). The act of 1873 was enacted after it became apparent that the creation of the contemplated pneumatic tube system was impracticable, and it authorized the defendant "to construct, maintain, and operate an underground railway, for the transportation of passengers and property" (*Astor*, 113 NY at 107, quoting L 1873, ch 185). Yet, the title of the 1873 act, "An act supplementary to chapter 842 of the Laws of 1868, in relation to carrying letters, packages, and merchandise by means of pneumatic tubes, in New York and Brooklyn, and to provide for the transportation of passengers in said tubes," was, according to the *Astor* Court, "well calculated to deceive any persons to whose attention it came while the act was under consideration" (*id*. at 106), since "a person reading the title alone would have no clue whatever to the great railway scheme actually authorized by the act" (*id*. at 110).

In contrast to the legislation considered in *Astor*, which attempted to hide the creation of an underground railway system within pneumatic tubes legislation, here, Local Law 152 had a single purpose, which was proclaimed in its title and openly debated before the Council, namely, to add e-cigarettes to existing smoking legislation.

That the title of chapter 5 of title 17 of the Administrative Code, in which Local Law 152 was codified, refers to smoke-free air, does not affect the legitimacy of the challenged local law. "Titles are to be distinguished from headings of chapters or sections of a code, which are sometimes treated as part of the act itself" (McKinney's Cons Laws of NY, Book 1, Statutes § 123 [a], Comment). "Statutory titles . . . are of little significance" and "may not alter or limit the effect of unambiguous language in the body of the statute itself" (*People v Taylor*, 42 AD3d 13, 18 [2d Dept 2007] [internal quotation marks omitted], *lv dismissed* 9 NY3d 887 [2007]).

Accordingly, the order of the Supreme Court, New York County (Frank P. Nervo, J.), entered May 11, 2015, which

granted defendants' motion for summary judgment dismissing the complaint and denied plaintiffs' motion for summary judgment, should be modified, on the law, solely to declare that Local Law 152 is enforceable and not violative of the New York State Constitution or statutory law, and as so modified, affirmed, without costs.

MAZZARELLI, J.P., MOSKOWITZ, KAHN and GESMER, JJ., concur.

Order, Supreme Court, New York County, entered May 11, 2015, modified, on the law, solely to declare that Local Law 152 is enforceable and not violative of the New York State Constitution or statutory law, and as so modified, affirmed, without costs.