(57 App. Div. 166.)

## In re CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. January 25, 1901.)

1. STATUTES—SUBJECT IN THE TITLE—CONSTITUTIONAL LAW.
    Where a law was entitled "An act in relation to Clinton avenue, in the borough of Brooklyn, in the city of New York," it sufficiently complied with Const. art. 3, § 16, requiring the subject of private or local bills to be expressed in the title.

2. EMINENT DOMAIN—WIDENING OF STREETS—ORNAMENTAL PURPOSES.
    Where the legislature passed a law to widen a city street 20 feet on each side, reserving the added space for ornamental court yards, such taking was for a public purpose, and a proper subject for the exercise of the power of eminent domain.

Appeal from special term, Kings county.

Application of the city of New York to acquire title to property for widening a public street. From an order adjudging the act authorizing such proceedings to be unconstitutional and void, and from an order vacating the appointment of commissioners, the city appeals. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, and SEWELL, JJ.

William J. Carr, for appellant.
John F. Clarke, for respondent.

WOODWARD, J. By the provisions of chapter 257 of the Laws of 1899, it was made the duty of the city of New York to institute proceedings to widen Clinton avenue, in the borough of Brooklyn and city of New York, in conformity with the provisions of the said act. The proceedings were instituted, resulting in the appointment of commissioners without opposition, but certain property holders subsequently appeared, and asked the court to open their default in the proceedings, basing their application on the ground that the statute under which the commissioners were appointed is unconstitutional and void. The city of New York has waived all technical objections, and the appeal from the order vacating the order appointing the commissioners brings up the question simply of the constitutionality of the statute. Three grounds were urged before the court below, but only two are insisted upon here, the third being apparently abandoned. The two grounds asserted are that the act is in violation of section 16 of article 3 of the constitution, in that the subject of the act is not

expressed in the title, and that the lands directed to be taken under said act for the widening of Clinton avenue are not to be taken for any public use.

The purpose of the act will be seen from the first section, which reads as follows:

"The boundaries of Clinton avenue, in the borough of Brooklyn and city of New York, are hereby so changed, that between Gates avenue and Willoughby avenue the easterly side or line of said Clinton avenue shall be twenty feet east of its present easterly side or line, and its westerly side or line shall be twenty feet west of its present westerly side or line. The two strips of land hereby added to said avenue shall not be added to its traveled portion, but shall be reserved and preserved as ornamental courtyards for the benefit and improvement of said avenue."

The remainder of the act relates to the details, determining to what extent the original owners may make use of the ornamental courtyards, and it is provided that Clinton avenue "shall be widened by the said city to the boundaries herein fixed, by acquiring for the uses and purposes aforesaid an estate and interest in the said two strips of land, subjecting and limiting their use as herein provided."

The first objection is that the title of this act, "An act in relation to Clinton avenue, in the borough of Brooklyn, in the city of New York," does not comply with the condition that "no private or local bill, which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title." Const. art. 3, § 16. It is important, in considering constitutional questions, that the judiciary shall not encroach upon the legitimate field of the legislature; and while we should not hesitate, in a clear case, to declare a statute in violation of the limitations fixed by the people, we ought not to extend restrictive clauses upon the legislative power beyond the intent of the people in making such restrictions. We should therefore undertake to discover the mischiefs which existed, and which were intended to be cured, in order to determine to what extent the legislative power was designed to be curtailed. It is now more than 100 years since the attention of the people of this state was emphatically called to the abuse which this clause of the constitution was designed to correct. The Bank of New York, chartered in 1791, had a practical monopoly of the banking business in the city of New York, and its stockholders and directors were Federalists, with Alexander Hamilton at their head. By 1800 this bank had come to wield, or was supposed to wield, an important political influence, and Aaron Burr conceived it to be necessary to have a rival bank. The legislature was in the hands of the Federalists, and bank charters appear to have been granted in those days as political favors. In this condition of affairs, Mr. Burr conceived the plan of taking advantage of the then recent yellow fever scourge to organize a company for the purpose of affording an abundant supply of pure and wholesome water; and the legislature were, with great plausibility, invoked to charter, on the most liberal terms, a company which professed its willingness to undertake so useful an enterprise. As it was uncertain what amount of capital would be required, and with a view to avoid any chance of failure on account of deficiency of capital, the company requested to be authorized to raise $2,000,000; but as it was possible, and, indeed, probable, that the con-

struction of the waterworks would not absorb the whole of that sum, they asked for a provision that the "surplus capital might be employed in any way not inconsistent with the laws and constitution of the United States, or of the state of New York"; and under the provisions of this waterworks act one of the strongest banking institutions of the city of New York was incorporated, and has continued to do business up to the present time, and it is to-day going through the form of maintaining a water plant. 1 Hamm. Pol. Hist. N. Y. 325. This precedent was followed, or attempted to be followed, in various bank charters, which were eagerly sought for in the periods of inflation which intervened between that time and the meeting of the constitutional convention in 1846, particularly in the great speculative era which reached its height in the decade preceding that event; and other branches of business felt the pernicious effects of this kind of legislation, giving no intimation of its real purpose until it was in the process of being carried out. It was to meet this condition of affairs that the provision of the constitution now under consideration was brought forward and adopted, and that it has served a useful purpose is abundantly evidenced by the cases in which the courts have intervened; as in the case of Astor v. Railroad Co., 113 N. Y. 93, 20 N. E. 594, 2 L. R. A. 789, where it was attempted to construct an underground railway in the city of New York under the amendments of an act which was originally designed to provide for a system of pneumatic tubes for the transmission of small packages and letters. See Coxe v. State, 144 N. Y. 396, 39 N. E. 400; In re Paul, 94 N. Y. 497, 505. In these cases the courts have recognized the spirit and purpose of the restriction, while, in a long line of adjudications upon titles not more clear than that involved in the matter now before us, they have refused to declare the statutes void. In Conner v. Mayor, etc., 5 N. Y. 285, the court sustained "An act in relation to the fees and compensation of certain officers in the city and county of New York," declaring that "the design of the constitutional provision was to prevent the uniting of various objects, having no necessary or natural connection with each other, in one bill, for the purpose of combining various pecuniary interests in support of the whole, which could not be combined in favor of either by itself." In Tift v. City of Buffalo, 82 N. Y. 204, the court sustained a title "to legalize certain proceedings of the common council of the city of Buffalo." The court say: "It is claimed that it does not express the subject, inasmuch as it does not name this roadway. It would have been more definite had it done so; but it does advise all interested that the purpose of the bill is to legalize proceedings of the common council of the city of Buffalo,—not all of its proceedings, but certain of them." This act had for its object the legalizing of the acts of the common council in reference to the improvement of a certain highway, the expense of which had not been levied in accordance with the provisions of the city charter. See authorities cited at bottom of page 211; also In re Village of Middletown, 82 N. Y. 196, where the title, "An act to supply the village of Middletown with water for public and private purposes," is sustained. In Board v. Dwight, 101 N. Y. 9, 3 N. E. 782, the court sustained a title, "An act for the relief of the village of Clinton," which act had for its object

the correction of errors on the part of the water commissioners in attempting to procure a water supply for that village. The court admits that "it must be conceded that the words of the title are very general, but they are comprehensive, and do express a single intent, which the body of the act neither exceeds nor contradicts." In Re Knaust, 101 N. Y. 188, 4 N. E. 338, the court held the title, "An act relative to the powers and duties of the commissioners of Central Park," good, although the act provided, in addition to the duties of the board, provisions for widening, grading, improving, etc., a certain street, for which Knaust was called upon to contribute under an assessment. The court say that "a careful scrutiny of its provisions has not enabled us to discover in what respect—having in mind repeated decisions in answer to such objection—the title could be improved. It expresses a general object, and it must now be considered as the settled rule of construction that, where such is the case, all matters fairly and reasonably connected with it, and all measures which will or may facilitate its accomplishment, are proper to be incorporated in the act, and are germane to the title." See authorities cited at page 194, 101 N. Y., and page 341, 4 N. E.; also Cole v. State, 102 N. Y. 48, 58, 6 N. E. 277. In Sweet v. City of Syracuse, 129 N. Y. 316, 331, 27 N. E. 1081, 1083, 29 N. E. 289, the court say: "It is necessary that the title be such as to fairly suggest or give a clue to the subject; but, when that is expressed, all matters fairly and reasonably connected with it, and all measures which will or may facilitate its accomplishment, are proper to be incorporated in the act, and are germane to the title." This case was followed in principle and cited as the authority in Curtin v. Barton, 139 N. Y. 505, 513, 34 N. E. 1093.

Tried by the rule thus laid down, there can be no doubt that "An act in relation to Clinton avenue, in the borough of Brooklyn, in the city of New York," fairly calls attention to the subject of the act. It was not contemplated that the title should give a digest of the bill. All of the purposes of the constitution have been served when the title calls attention to the general subject to be dealt with in the act, so that the members of the legislature and the public may be fairly apprised of the fact that the statute contemplates a change in the law. When notice was given by the title of this bill that it was in "relation to Clinton avenue, in the borough of Brooklyn, in the city of New York," it was much more definite than many of the acts which have been approved, as it called attention to a particular street, and those interested in that thoroughfare would naturally be led to examine the measure to determine how their interests were affected, and it cannot be said that the purpose sought to be accomplished was outside of the scope of a law in relation to Clinton avenue. It related wholly to that avenue, it provided for an increase in width of that thoroughfare, and all of the matters contained in the bill related to that general object.

It is urged, however, that this was not a proper exercise of the power of eminent domain, in that the purpose is not public. We apprehend that the legislature has the power to open, widen, and extend public thoroughfares within the limits of cities, either by general or special laws (In re Woolsey, 95 N. Y. 135); that for this purpose it has a right to determine, within reasonable limits at least, the width of

such highways; and it is a familiar doctrine that the owners of abutting property upon streets, where the fee of the land in the highway is in the abutting owner, have the right to the use of the street in every particular not inconsistent with the right of use in the public. It is not necessary that every part of all highways should be used for the passage of vehicles and pedestrians. It is proper that some regard should be had for the æsthetic tastes, the comfort, health, and convenience of the public; and if the legislature had enacted that Clinton avenue should be increased in width to the extent provided in this act, and had provided that a strip in the center of the highway, 40 feet wide, should be devoted to trees and flowers, as is done in many of our cities, it would hardly have been questioned that this constituted a public use, in the same sense that a park preserve is generally recognized as a public use. Shoemaker v. U. S., 147 U. S. 282, 297, 13 Sup. Ct. 361, 37 L. Ed. 170, and authorities there cited. Because the legislature has preferred to leave this breathing space upon the sides of the street, subject to the limited use of the owners of the fee, does not change its essential character, and the improvement is undoubtedly much less expensive than the one which is suggested as within the legislative discretion. "The adjudicated cases likewise establish the proposition," say the court in Shoemaker v. U. S., supra, "that while the courts have power to determine whether the use for which private property is authorized by the legislature to be taken is in fact a public use, yet, if this question is decided in the affirmative, the judicial function is exhausted; that the extent to which such property shall be taken for such use rests wholly in the legislative discretion, subject only to the restraint that just compensation must be made." Conceding that the legislature has the power to increase the width of Clinton avenue; that it would be justified in taking possession of private property for this purpose upon the payment of just compensation,—we are of opinion that it has a right to take a lesser estate in the property than would be necessary for a complete dedication to the use of the public, and that the use is none the less public, to the extent to which the property is taken, because it is left in the partial control of the present owners. The right that is proposed to be taken is not the right to walk or ride over these particular additions to the width of the avenue, but to afford "ample space for the access of light and air, and also to beautify and adorn." In re Curran, 38 App. Div. 82, 55 N. Y. Supp. 1018. "A street may," to quote the same case, "in part unite the two purposes,—one to furnish a way for travel, and the other as a park or public place." It may hardly be questioned that the legislature may authorize the taking of any part of this right which it may deem advantageous to the public on the payment of just compensation. Am. & Eng. Enc. Law (2d Ed.) 1088, and authorities there cited. This is in harmony with the opinion of the court in Re Bushwick Ave., 48 Barb. 9, which is very similar to the case at bar, where the court below held (page 12) that "the taking of twenty feet on each side of the avenue, and the appropriation of the same as courtyards only, is such a taking as will justify an appraisement of damages therefor. A dominion is asserted over this land by the public, to the extent of depriving the owner of his right to use and enjoy the same for

any other purpose than a courtyard.  It is so far taken for public use, and is a subject for compensation."  See Sage v. City of Brooklyn, 89 N. Y. 189, 198.

The order appealed from should be reversed, with costs.  All concur.