STATE EX REL. HOLLIDAY, RELATOR, v. O'LEARY, CITY
CLERK, RESPONDENT.

(No. 2,993.)

(Submitted March 23, 1911.   Decided March 29, 1911.)

[115 Pac. 204.]

*Elections — Nomination    to    Judicial    Office — Constitution —
Statutes—Uniform Operation—Defective Title—Right to Ques-
tion Validity.*

Statutes—Validity—How Determined.
  1.  The validity of a statute is not to be determined by what has
  been, but by what may be, done under it.

Elections—Nominations    to    Judicial    Office—Constitution—Statutes—In-
  validity.
  2.  *Held,* under the rule that a statute which denies to the elector
  of the state, or any part of it, the right to nominate candidates
  for public office is void as violative of the Bill of Rights .(Const.,
  Art. III, secs. 5, 26), that Chapter 113, Laws of 1909, providing
  for nonpartisan nomination to judicial office, by petition, is invalid
  because incapable of being made to operate uniformly throughout
  the state, in that it fails to provide any means by which a candi-
  date for judicial office may be nominated in a newly created munic-
  ipality, or for a newly created judicial office, or for judicial office
  in a district the boundaries of which have been changed since the
  last election or may be changed hereafter.

Same—Statutes—Defective Title.
  3.  Chapter 113, Laws of 1909, *held,* unconstitutional for the fur-
  ther reason that its title does not clearly express the purpose of
  the statute, as required by section 23, Article IV of the Constitu-
  tion.

Statutes—Validity—Who may Question.
  4.  One to whom a statute denies a right which, in its absence, he
  would have, may raise the question of the constitutionality of the
  Act.

    MR. JUSTICE SMITH dissenting.

MANDAMUS.   Original application by the state, on the relation
of W. H. Holliday, against John O'Leary, as clerk of the city
of Butte, Silver Bow county, to compel the filing of relator's
certificate of nomination as a candidate for the office of police
judge of the city.   Writ granted.

*Mr. W. B. Rodgers,* and *Messrs. Davies & Lyon,* submitted a
brief in behalf of Relator.  *Mr. Rodgers* argued the cause orally.

Chapter 113, Laws of 1909, is obnoxious to section 23, Article
V, of the state Constitution.  (See *Rouse* v. *Thompson,* 228 Ill.

522, 81 N. E. 1109; *Yegen* v. *Board of Commissioners,* 34
Mont. 79, 85 Pac. 740; Lewis' Sutherland on Statutory Con-
struction, 2d ed., secs. 123, 125; *State* v. *Brown,* 29 Mont. 207,
74 Pac. 366; *Blades* v. *Board of Water Commissioners,* 122
Mich. 366, 81 N. W. 271; *Brooks* v. *Hydorn,* 76 Mich. 273, 42
N. W. 1122; *Sneath* v. *Mager,* 64 N. J. L. 94, 44 Atl. 983;
*New York & G. L. Ry. Co.* v. *Montclair Township,* 47 N. J.
Eq. 591, 21 Atl. 493; *State* v. *Sholl,* 58 Kan. 507, 49 Pac. 668.)

Said Act is also unconstitutional because it violates section
25 of the same Article. (*People* v. *Board of Election Com-
missioners,* 221 Ill. 9, 77 N. E. 323, 5 Ann. Cas. 562.)

The Act is also void for the following reasons: (a) It is in-
operative and the intention of the legislature to make all judicial
officers throughout the state nonpartisan, and require them to
be nominated in the manner therein provided, cannot be carried
out; (b) On account of the inability to make nominations,
as provided therein, under certain existing conditions, the inten-
tion of the legislature that the law should be uniform in its
operation is completely thwarted and destroyed, and cities of
the same class and certain judicial districts cannot make nomina-
tions as provided therein and, indeed, cannot make any
nominations whatsoever for the judicial office of police judge,
or the office of district judge; (c) These conditions necessarily,
when they arise, prohibit the qualified electors residing within
the particular municipalities and cities, and the particular ju-
dicial districts, from making any nomination at all of candi-
dates for these elective offices by participating therein, and by
reason thereof said Act violates that portion of section 5, of
Article III, of the state Constitution, which provides that all
elections shall be free and open; (d) They make the law local
and special, whereby it contravenes the Constitution. (1 Lewis'
Sutherland on Statutory Construction, 2d ed., sec. 86; *Hilburn*
v. *St. Paul Ry. Co.,* 23 Mont. 229, 58 Pac. 551, 811; *Chaffee's
Appeal,* 56 Mich. 244, 22 N. W. 871.) Upon the proposition that
any law which deprives a portion of the electorate in taking
part in the nomination of the candidates for public office is in

contravention of that provision of the Constitution heretofore mentioned in relation to free and open elections, the authorities are abundant and uniform. (See *State ex rel. Ragan* v. *Junkin,* 85 Neb. 1, 122 N. W. 473, 23 L. R. A., n. s., 839; *State* v. *Drexel,* 74 Neb. 776, 105 N. W. 174; *People* v. *Election Commissioners,* 221 Ill. 9, 77 N. E. 321, 5 Ann. Cas. 562; *Rouse* v. *Thompson, supra; Spier* v. *Baker,* 120 Cal. 370, 52 Pac. 659, 41 L. R. A. 196; *Johnson* v. *Grand Forks Co.,* 16 N. D. 363, 125 Am. St. Rep. 662, 113 N. W. 1071; *Britton* v. *Board etc.,* 129 Cal. 337, 61 Pac. 1115, 51 L. R. A. 115.)

This law being clearly unconstitutional and inoperative, in taking away the right to make nominations in the cases mentioned above, it cannot be upheld as to localities where such objections might not exist, and said conditions might not obtain. (1 Lewis' Sutherland on Statutory Construction, 2d ed., sec. 307; *People* v. *Election Commrs., supra.*) Where an Act, indivisible in its nature, is void in part, it is void as to all its provisions. (*Doe ex dem. Davis* v. *Minge,* 56 Ala. 121; *Ex parte Jones,* 49 Ark. 110, 4 S. W. 639; *People* v. *Cooper,* 83 Ill. 585; *Hinze* v. *People,* 92 Ill. 409; *Cornell* v. *People,* 107 Ill. 372; *State* v. *Clinton,* 28 La. Ann. 201; *State* v. *Perry County Commissioners,* 5 Ohio St. 497; *Burkholtz* v. *State,* 84 Tenn. 71; *Ex parte Towles,* 48 Tex. 413.)

We also insist that the provision of this law whereby candidates for judicial offices may not be nominated by political parties is violative of section 5 of Article III of the Constitution of the state of Montana, and kindred provisions. This reads as follows: "All elections shall be free and open, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."

It is an elementary and fundamental principle that the language of the Constitution must be given the meaning that it was understood to have at the time the Constitution was adopted; and that the conditions then obtaining must be given full force in its construction. It therefore follows that the word "elections" as used in this section, and the words "right of suffrage"

as used in this section, must be given the meaning and are used therein in the sense, and carry with them the same privileges that were then enjoyed; and it was the intention of this section of the Constitution to forever prohibit the legislature from in any way infringing upon the right of suffrage as then enjoyed by the people of the state of Montana, or as conferred upon them by the provisions providing for the election of judicial and executive officers which had theretofore been filled not by election, but by appointment, on account of the state being then a territory. It is well settled by abundant authority that the phrases "elections," "suffrage" or "right of suffrage," as used in this section of the Constitution, mean more than the simple right to go to the polls and cast a ballot for some candidate for office at the regular or general election, and that they include the right to participate freely in all the preliminary steps to the nomination, and in the nomination of candidates, as well as to participate in their election after they have been nominated; and that any infringement of the electors' right to so participate, or any unjustifiable restriction upon that right, is an infringement of this provision of our Constitution. (See authorities under paragraph 3, *supra.*) The right of suffrage and nomination of candidates for office also includes the right to use the influence of the voter and his vote to defeat those who aspire for such positions. This right is absolutely denied to every elector, and therefore elections, so far as they relate to the nomination of candidates, are not free and open.

*Mr. Edwin M. Lamb,* appearing in behalf of Respondent, argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On March 2 of this year, and within the time allowed by law for filing certificates of nominations of candidates for city offices, there was presented to the city clerk of Butte, for filing, a certificate which on its face discloses that relator had thereto-

fore been regularly nominated by the Republican party of Butte as its candidate for the office of police judge of said city, to be voted for at the forthcoming city election. The city clerk refused to file the certificate, upon the sole ground that Chapter 113, Laws of 1909, forbade him doing so. Application was thereupon made to this court for a writ of mandate to compel the clerk to file the certificate. An alternative writ was issued, and upon the return the matter was argued and submitted for determination. This proceeding raises the question of the constitutionality of Chapter 113 above, popularly known as the Nonpartisan Judiciary Act.

1. However laudable the ambition of our legislators to divorce the judiciary from partisan politics, they failed to accomplish their purpose by means of Chapter 113, above, by reason of the fact that its provisions are not sufficient to make it operative throughout the state.

(a) It does not provide any means by which a candidate can be nominated for judicial office in a newly created municipality. It is a matter of general knowledge that at the time this Act was passed there were cities and towns in the state that had sprung up since the last election for city officers; that these municipalities have increased in population rapidly, are now duly incorporated and entitled in every instance to elect officers, including police judge. This Act prohibits the nomination of a candidate for judicial office in any manner, except by petition signed by electors of the municipality in number not less than five per cent of the vote cast for the successful candidate for the same office at the last preceding election. In every instance of a newly created municipality, there has not been a preceding election, or any successful candidate for the same office, and therefore this Act prohibits the electors in such municipality from participating in the nomination of any candidate for that office. The same thing is true of a newly created judicial district. A candidate for nomination for district judge in such district will be confronted by conditions with which it is impossible to comply. He cannot be nominated, except by petition,

and he cannot be nominated by petition, because he cannot determine, and neither can the secretary of state, the number of signatures necessary to secure his nomination, since there never was a preceding election for the same office in the same district.

(b) The Act does not make any provision for the nomination of a candidate for a newly created judicial office. It is a matter of legislative history that, since the last general election for district judges, four new district judgeships have been created. Neither any one of the appointees to these positions, nor anyone else, can be nominated a candidate to succeed to one of these offices under the provisions of this Act; for at the time the election in November, 1908, was held none of these offices existed, and there could not have been a successful candidate for any of them.

(c) The Act does not make any provision for the nomination of a candidate for judicial office in any district the boundaries of which have been changed since the last election, or may hereafter be changed. Since the last election of district judges, the boundaries of the eighth, tenth, eleventh, and thirteenth judicial districts have been altered. A few illustrations will serve to emphasize this omission in the Act. At the last election for district judge, the eighth judicial district was composed of Cascade county only. That district now comprises Cascade and Teton counties. There was not any successful candidate for district judge in the territory which now comprises this district. A petition signed by five per cent of the vote received by the successful candidate in 1908 would ignore altogether the vote of Teton county—a county which is now part of the district. In 1908 the eleventh district comprised Flathead and Teton counties. After that election and before Chapter 113 was passed, Teton county was detached from that district (Laws 1909, Chapter 26). Shall a candidate for the nomination for district judge be required to have his petition signed by electors in number not less than five per cent of the vote cast for the successful candidate at the last election in Flathead county only, or shall he be re-

quired to secure signatures in number not less than five per cent of the vote received by the successful candidate in 1908 in both Flathead and Teton counties? If this last alternative be chosen, then the candidate is required to take into consideration the vote cast in a county which is not now a part of the district in which he aspires to office. The same conditions prevail in the tenth and thirteenth districts. But great emphasis may be given to this lapse in the Act by an assumed state of facts:

By an Act of the Twelfth Legislative Assembly, approved February 11, 1911, Musselshell county was created out of a portion of Fergus county, a portion of Meagher county, and a portion of Yellowstone county. The portions taken from Fergus and Meagher counties were theretofore portions of the tenth judicial district, while the portion taken from Yellowstone county was theretofore a portion of the thirteenth judicial district. Assume that when Musselshell county was created it had been constituted the fourteenth judicial district; and assume a further fact, which may or may not be true, that the present boundary lines of Musselshell county do not follow any of the election precinct boundary lines, but that the new county now contains portions only of election precincts from each of the parent counties. A candidate for nomination for district judge in the supposed district could not possibly comply with the requirements of Chapter 113, because there was not any fourteenth district at the last election, and not any candidate for district judge therein; but more particularly because there is not any means by which to determine the vote cast in the territory which now comprises Musselshell county, under the assumed state of facts. An entire election precinct is the smallest territorial subdivision of the state for which any record of the vote is or can be had, and it is impossible for the officer charged with the duty of filing nominating certificates to determine the vote cast for any candidate in a portion of an election precinct. It will not do to say that the number of signatures necessary to secure a nonpartisan nomination under the circumstances enumerated can be estimated or approximated. The operation of a

statute cannot be made to depend upon mere guesswork. The theory of this Act is that the officer with whom the nominating certificate is to be filed, by reference to the official returns of the last election as they appear in his own office, shall determine whether the certificate tendered for filing is signed by the required number of electors. Neither is it any answer to say that the conditions assumed may not arise. They may arise, [1] and the validity of a statute is not determined by what has been done under it, but by what may be done under it. This is a well-recognized rule of constitutional law. (1 Lewis' Sutherland on Statutory Construction, sec. 107; *Minneapolis Brewing Co.* v. *McGillivray* (C. C.), 104 Fed. 258.)

The illustrations given only serve to show that Chapter 113 is so far deficient in its provisions that it cannot be made to operate uniformly throughout the state; and, if it cannot be [2] made to operate in any portion of the state, then, as to such portion, the electors are denied the right to participate in the nomination for judicial candidates, and any statute which denies to the elector of the state, or any portion of it, the right to nominate candidates for public office, is in violation of sections 5 and 26 of our Bill of Rights, and void. (*State ex rel. Adair* v. *Drexel*, 74 Neb. 776, 105 N. W. 174; *State ex rel. Ragan* v. *Junkin*, 85 Neb. 1, 122 N. W. 473, 23 L. R. A., n. s., 839; *People ex rel. Breckon* v. *Election Commissioners*, 221 Ill. 9, 77 N. E. 321; *Rouse* v. *Thompson*, 228 Ill. 522, 81 N. E. 1115.)

It is not an answer to say that the elector may vote for the person of his choice by writing the name on the ballot, even though such person cannot be nominated for the office. It is in the infringement of the right of the electors to nominate candidates that this measure offends against the letter and spirit of our Constitution. The general rule of law applicable to an Act of this character is aptly stated by this court in *Hilburn* v. *St. Paul, M. M. Ry. Co.*, 23 Mont. 229, 58 Pac. 551, as follows: "So, if an Act of the legislature is so vague and uncertain in its terms as to convey no meaning, or if the means of carrying

out its provisions are not adequate or effective, or if it is so conflicting and inconsistent in its provisions that it cannot be executed, it is incumbent upon the courts to declare it void and inoperative.'' The application of that rule is conclusive against the validity of this Act.

2. The title does not clearly express the purpose of the Act. The title of Chapter 113 is, ''An Act to provide for nonpartisan nominations for judicial offices.'' Section 23, Article 5, of the Constitution, in so far as applicable here, provides: ''No bill * * * shall be passed containing more than one subject, which shall be clearly expressed in its title.'' The title of this Act indicates that the purpose of the legislation is to provide for nonpartisan nominations for judicial offices; but that such result was not the real purpose of the Act is apparent, for nonpartisan nominations were already provided for in section 1313, Political Code of 1895 (Rev. Codes, sec. 524), and the method there prescribed was not changed in any particular. It is hardly to be presumed that our legislature would solemnly enact a statute upon any subject which was already covered by another statute in precisely the same language; and yet, if the title of this Act is fairly indicative of its purpose, that is just what our legislature did. The body of this Act, however, discloses that the purpose of the legislation was not to provide for nonpartisan nominations, for which provision was already made, but to prohibit judicial nominations by partisan political organizations.

The reasons which prompted the enactment of the constitutional provision now under consideration are stated by Mr. Justice Hunt, for the court, in *State* v. *Anaconda Copper Min. Co.,* 23 Mont. 498, 59 Pac. 854, as follows: ''The purposes of the clause of the constitutional mandate that the subject of a bill shall be clearly expressed in its title have been considered and defined by this court in *State* v. *Mitchell,* 17 Mont. 67, 42 Pac. 100; *Jobb* v. *County of Meagher,* 20 Mont. 424, 51 Pac. 1034, and the authorities cited in these cases. Briefly summarized they are: To restrict the legislature to the enactment of laws the objects of

which legislators and the public as well may be advised of, to the end that any who are interested, whether as representatives or those represented, may be intelligently watchful of the course of the pending bill. The limitation is likewise designed to prevent legislators and the people from being misled by false or deceptive titles, and to guard against fraud in legislation by way of incorporating into a law provisions concerning which neither legislators nor the public have had any intimation through the title read or published.'' However refined the distinction we have made above may appear, it is not without merit. It is a part of our constitutional history that during the early years of our existence as a nation, few, if any, of our state Constitutions contained a provision similar to the one referred to herein. It is doubtful if any state Constitution now omits it. It was early discovered that ambitious or designing legislators, prompted by selfish motives or motives of less merit, procured the enactments of measures by reason of their high-sounding or popular titles, when in fact the title merely cloaked a purpose contrary to that expressed; and it was to prevent the members of the legislature and the people generally from being thus imposed upon that these provisions have been adopted. An interesting historical sketch of the conditions which led to the adoption of a like provision in the Constitution of New York will be found in *Matter of New York,* 57 App. Div. 166, 68 N. Y. Supp. 196.

The framers of our Constitution wisely held that it is not a hardship to require that every title shall clearly express the single purpose of the bill; but, even if it should prove a hardship, that it is better that an Act be held inoperative, than that it be passed under a title which might deceive the unwary. From the fact that for years we had provisions for partisan and nonpartisan nominations, and that these provisions worked harmoniously, it may be that members of the Eleventh Legislative Assembly voted for this measure, who would not have voted for a measure entitled ''An Act to prohibit partisan nominations for judicial offices.'' But whether any member was

in fact deceived is beside the question. The title of this Act [3] does not clearly express its purpose, as required by the Constitution.

Had the title been a general one, a different question would be presented, but the title of this Act limits the Act itself to provisions for nonpartisan nominations only. Prior to the passage of this measure, partisan nominations of candidates for judicial offices were recognized by sections 521–523, Revised Codes. There is not any intimation in the title of this Act that its purpose was to repeal those provisions or prevent partisan nominations of judicial candidates in the future. If it be said that the measure does in fact provide for nonpartisan nominations by continuing in force the provisions of section 1313, then it must be conceded that, in so far as its purpose is to prohibit partisan nominations, that purpose is not expressed in the title at all, and, if not expressed in the title, it is excluded from the body of the Act, and the measure is void to the extent, at least, that it purports to prohibit such partisan nominations.

To say that the title, "An Act to provide for nonpartisan nominations for judicial offices," clearly expresses a purpose to prohibit partisan nominations is equivalent to saying that every statute which provides one method for doing a particular thing, perforce prohibits the same thing being done in any other manner—a conclusion which does not find support in any authority. Many statutes provide alternative or cumulative remedies, or alternative or cumulative methods, for doing a particular act or thing. If the purpose of Chapter 113 is to prohibit partisan nominations, the title fails to indicate such purpose, but rather suggests an altogether different object or purpose.

3. Is this relator in a position to raise the question of the constitutionality of this statute? It is the general rule that one whose rights are not affected by a statute, will not be heard to question its validity. (*Spratt* v. *Helena Power Transmission Co.*, 37 Mont. 60, 94 Pac. 631; 1 Lewis' Sutherland on Statutory Construction, sec. 107.) The converse of this is equally true: One whose rights are affected by the operation of a statute may

question its validity. If Chapter 113 is not in effect, then the relator has the right to have his certificate filed as presented, under sections 521–523, Revised Codes. If Chapter 113 is in full force and effect, then he does not have such right. The effect of this statute, then, if in force, is to deny to the relator a right which [4] otherwise he would have, and this is sufficient to entitle him to raise the question of its validity. (*State* v. *Brown*, 38 Ohio St. 344; *Brooks* v. *State*, 162 Ind. 568, 70 N. E. 980.)

Other objections are urged against the validity of this measure, but it has not been deemed necessary to consider them at this time. A peremptory writ has issued, and a further order is not necessary.

MR. CHIEF JUSTICE BRANTLY: I concur. I am of the opinion that the Act is void for the additional reason that it falls within the prohibition found in section 25, Article V, of the Constitution, which declares: "No law shall be revised or amended, or the provisions thereof extended by reference to its title only, but so much thereof as is revised, amended or extended shall be re-enacted and published at length." Upon reading the title, one would expect to find in the body of the Act specific directions as to the method to be pursued in nominating candidates for judicial offices. In fact, we find nothing of the kind. Instead we find in the first and second sections provisions which have no other effect than to amend section 1313 of the Political Code of 1895, now section 524 of the Revised Codes, by making it exclusive, in so far as it applies to the candidates mentioned. In effect it adds, by reference to that section, by number only, a proviso which may be expressed as follows: "Provided that candidates for judicial offices shall be nominated as herein prescribed, and not otherwise." Since the infirmities discussed by Mr. Justice Holloway sufficiently demonstrate the invalidity of the Act, it is not necessary to discuss this feature of it.

MR. JUSTICE SMITH: I dissent. My judgment is (a) that the title of the Act is sufficient, and (b) that the so-called "Nonpartisan Judiciary Act" can be substantially complied with, if

a *bona fide* attempt is made to do so.   The matter of placing the names of candidates upon the official ballot is simply a preliminary detail; if the method provided is uniform as to all aspirants for public office by independent nomination, a substantial compliance with the procedure, indicated by the legislature is all that is necessary.   The really vital questions can only arise after nominations have been made.   These relate to the election which follows.   Even assuming that the future may disclose some difficulty in complying literally with the terms of the Act, I do not think this relator, who has encountered no such obstacle in the city of Butte, is in a situation to raise the question at this time.