BUNYAN et al. v. COMMISSIONERS OF THE PALISADES INTERSTATE PARK et al.   (No. 75/15.)

(Supreme Court, Appellate Division, Third Department.   May 5, 1915.)

1. INJUNCTION ⊜110—JURISDICTION—RESTRAINING STATE BOARD.

Under Code Civ. Proc. § 605, providing that an injunction can be issued against a state officer or board only by the Supreme Court at a term in the department in which the officer or board is located, or the duty is required to be performed, an injunction may be granted in the Third department to restrain the unauthorized condemnation of land by the commissioners of the Palisades Interstate Park, who are required by the act authorizing their appointment (Laws 1900, c. 170), to advertise in the city of Albany, to make their reports to the Legislature, and to file them with the secretary of state, though the land sought to be condemned is located in another department.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 188–194; Dec. Dig. ⊜110.]

2. EMINENT DOMAIN ⊜284—RESTRAINING CONDEMNATION—RIGHT TO SUE—BONDHOLDERS.

The holders of corporate bonds may sue to restrain the unauthorized condemnation of land belonging to the corporation, without having first applied for relief either to the corporation or to the mortgage trustee.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 789, 790; Dec. Dig. ⊜284.]

3. EMINENT DOMAIN ⊜274—INJUNCTION—REMEDY AT LAW.

Under Laws 1900, c. 170, § 4, empowering the commissioners of the Palisades Interstate Park to sell lands for the park, section 5, authorizing the condemnation of those lands, section 6, requiring the filing of a map showing the lands to be taken, section 7, requiring them to publish a notice of intention to appropriate the lands and to apply for the appointment of commissioners of appraisement to ascertain the compensation, and section 8, providing that the court on the day named shall hear the applications and appoint the appraisers, any legal objection to the condemnation of the land can be raised at the hearing for the appointment of such appraisers, but no issue of fact as to such right can be raised, since no provision is made for a petition alleging the facts or any pleading by the landowner, and equity can therefore enjoin such proceedings where the objection depends upon matters of fact, but not where only issues of law are involved.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 753, 765–768; Dec. Dig. ⊜274.]

4. EMINENT DOMAIN ⊜41—"PUBLIC USE"—PARK.

The taking of land used as a stone quarry along the palisades of the Hudson and adjoining the state park, for the purpose of preserving the scenic beauty of the river and of the park, is a taking for a "public use," though the land itself is so rugged as not to be adapted for use as a park.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 86; Dec. Dig. ⊜41.

For other definitions, see Words and Phrases, First and Second Series, Public Use.]

---

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. EMINENT DOMAIN ☞41—PUBLIC USE—PRIVATE BENEFIT.
  Where a stone quarry which state commissioners sought to condemn was to be used for public park purposes, the taking is for a public use, notwithstanding the fact that private adjoining owners desired to rid themselves of the quarry, and contributed a large part of the costs; there being no charge that the commissioners were acting in bad faith.
  [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 86; Dec. Dig. ☞41.]

Appeal from Special Term, Otsego County.

Suit by Helen A. Bunyan, as executrix of and trustee under the will of James Bunyan, deceased, and others, against the Commissioners of the Palisades Interstate Park, individually and as commissioners, and another. From an order sending to a referee questions of fact resting on the motion for temporary injunction, and adjourning the determination of the motion until the referee shall report thereon, the defendants appeal. Order reversed, and motion for temporary injunction denied.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

George A. Blauvelt, of New York City, for appellants.

Arnold & Cooke, of Cooperstown (Charles E. Hotchkiss, of New York City, of counsel), for respondents.

SMITH, P. J. This action was originally brought by certain holders of bonds issued by the Conklin & Foss Company, which was a corporation engaged in quarrying upon certain land in the county of Rockland, in the state of New York, bordering upon the Hudson river. Thereafter all the bondholders and stockholders of the said corporation were made plaintiffs. The commissioners of the Palisades Interstate Park have, pursuant to the statute, filed their intention to condemn certain land adjoining the Hudson river upon Hook Mountain, which includes the land of the Conklin & Foss Company. This action is brought to enjoin such attempted condemnation, and the order here appealed from was made upon a motion for an injunction against the attempted condemnation pending the trial of the action.

[1] These commissioners assert their power to condemn under chapter 170 of the Laws of 1900, as amended and extended by chapter 691 of the Laws of 1906, and as further amended and extended by chapter 361 of the Laws of 1910. The land authorized to be condemned within these statutes is all situated either in the counties of Rockland or Orange, in the Second judicial department. This injunction order is sought in the Third judicial department. It is first claimed by the commissioners that under section 605 of the Code of Civil Procedure these state officers cannot be enjoined by a court sitting in the Third judicial department. It is not perfectly clear whether these be state or local officers. Assuming, however, that they may be deemed to be state officers, as is more probable, they are required to advertise in the city of Albany, to make their reports to the Legislature there sitting, and to file their records in the office of the secretary of state. The location of any state board is presumptively at the cap-

ital of the state. If the Attorney General were seeking an injunction against this board, it would be unreasonable to require him to go either to the First or Second department to prosecute the injunction. The Third department is primarily the official department of the state, and an injunction granted in that department as against the state board is therefore authorized.

[2] The next ground of challenge to this application is that these bondholders cannot bring this action without first having applied either to the corporation or to the mortgage trustee, and only then upon the refusal of such trustee to act. The corporation clearly does not represent the bondholders. A judgment against the corporation would have no effect whatever as against the bondholders, unless they were made parties to the action. The mortgage trustee represents them in a limited capacity. He has certain duties imposed by the trust mortgage. There is no express duty therein imposed to protect the bondholders from outside attack, and if a trustee thus appointed were held bound to protect the interests of the bondholders from any action which might impair ·the value of the security, such trustee would have duties far beyond any expressed in the trust instrument or ordinarily contemplated by those accepting such position of trustee. That this action may be brought by the bondholder without a request to the trustee would seem to be held in the ̇action of Carter v. Fortney (C. C.) 170 Fed. 463, and this decision was further sustained by the United States Circuit Court of Appeals in the same action, under the title of Fortney v. Carter, reported in 203 Fed. at page 454, 121 C. C. A. 514.

[3] A more difficult question is raised by the contention of the commissioners that these plaintiffs have full remedy for their grievances in the condemnation proceedings pending in the Ninth judicial district, and with this complete remedy at law equity will not intervene in their behalf. To determine the question thus presented it is necessary to examine critically the nature of the condemnation proceedings as authorized by chapter 170 of the Laws of 1900. By section 4 of this act this board of commissioners was given power—

"to select and locate such lands lying between the top of the steep edge of the Palisades and the exterior of the bulkhead line established by law upon the Hudson river, together with such separate parcels of unimproved lands lying on the front of the top of the Palisades from the New Jersey state line on the south to Piermont creek, near Piermont, in Rockland county, on the north, as may in their opinion be proper and necessary to be reserved for the purpose of establishing a state park and thereby preserving the scenic beauty of the Palisades."

This land the board was by section 5 of the act authorized to acquire if necessary by eminent domain. By section 6, before proceeding to acquire such lands, the commissioners were required to have made a map of such land, showing the boundaries and the names of the owners or reputed owners, and to ascertain as nearly as may be the fair value thereof. A copy of this map was required to be filed with the secretary of state, and also with the clerk of Rockland county. By section 7 of the act it is provided that after the filing of the said map said commissioners should·publish·for 20 successive weeks, both

in a state paper and in the paper printed in the county of Rockland, a notice declaring that said commissioners intend to appropriate said land and hold the same in trust for the people of the state of New York, and that said commissioners intend to apply to the Supreme Court in the Second judicial district on the day specified, for the appointment of three freeholders, residents of the state of New York, to act as commissioners of appraisement, to ascertain and report the just compensation to be paid therefor.   By section 8 it is provided that upon the day designated in said notice, or some other day to be named by the said court:

"The said court shall hear the application of  *  *  *  said commissioners, and shall appoint three disinterested persons, commissioners of appraisement."

The statute then provides for a hearing by the commissioners of appraisement, for their report and the confirmation thereof, and for an appeal from said appraisement.   The amendment of 1906 and 1910 to said statute, as far as this question is involved, is only to extend the power of the commissioners to condemn land north of that specified in the act of 1900, and upon the west bank of the Hudson river and including the land in question.

It is insisted by the plaintiffs in this action that this method of condemnation offers no opportunity either to the Conklin & Foss Company, or to the bondholders, to interpose what defenses they may have to the attempted condemnation by the said commissioners, and therefore their only remedy is through an equity action.   It is answered by the commissioners that this statute is to be read in connection with the General Condemnation Act, which gives to the property owner opportunity to raise any material issue as to the right of condemnation upon the application for the appointment of commissioners of appraisement.

There seem to be contemplated in the statutes two methods of condemnation of land.   The first method is that prescribed in the General Condemnation Act.   That provides for condemnation proceedings to be started by petition, which petition is required in a general way to contain all the facts upon which the right of condemnation rests. Upon the return of that petition the property owner is authorized to serve an answer denying any of the allegations of the petition, or averring new matter in defense of the application.   The other method of procedure seems to have been adopted where the condemnation was by the state itself, as, for instance, condemnation of land for canal purposes, in which the only prescribed procedure was the filing in specified public offices of maps, and the serving of a notice of intention to appropriate the land.   In that case there is no application for commissioners of appraisal, because the property owner is remitted to the Court of Claims for his damages.   The same procedure is adopted where land is condemned for the Adirondack Park. In People v. Adirondack Railway Co., 160 N. Y. 225, 54 N. E. 689, it was held that such procedure was not taking property without due process of law, and that the owner, in case there was an attempted condemnation without right, might proceed in various ways to resist the condemnation, as by action for trespass or otherwise.   The act under

examination in the case at bar in a way combines these two methods. It provides for the absolute condemnation by the filing of the map and notice of intention to appropriate. Because, however, the state is not liable for the compensation the landowner cannot be remitted to the Court of Claims; but his damages must be ascertained by an appraisal by commissioners to be appointed by the court, and for that purpose it is provided for an application to the court for the appointment of those commissioners upon notice to be duly published. The crucial question then is: What rights has the landowner upon the return day of that notice for the appointment of commissioners of appraisal? I have no doubt of his right first to be heard upon the personnel of the commission of appraisal. The very notice given to him that upon a certain day the appointment would be made involves of necessity his right to be heard. Not only has he the right to be heard upon the personnel of that commission, but I have no doubt further of his right to be heard upon the question whether any law exists authorizing the appointment of that commission. If the law under which it is claimed the right to appoint the commission is unconstitutional, he may object to their appointment upon that ground, and his right would seem clear to raise any legal objection appearing upon the face of the papers presented which he may have to the appointment of the commissioners, which would include any claim he may have of the invalidity of the statute upon legal grounds. No opportunity is given him, however, to raise any question which will involve an issue of fact. Under the General Condemnation Law the proceeding is started by a petition, which is required to recite all of the facts upon which the right of condemnation depends. Specific provision is made for an answer to that petition denying those allegations of fact, and asserting new matter in defense of the application. In this proceeding no petition is required alleging any facts upon which the right to condemn is claimed; no provision is made for an answer or for the raising of any issue of fact. Having in mind the different modes of proceeding for condemnation before mentioned, it would seem clear that this proceeding is apparently intended to conform as far as may be to proceedings for condemnation of lands for canal purposes and for the Adirondack Park. The provisions of the General Condemnation Act authorizing the raising of issues of fact upon the return of the petition cannot be read in connection with the provisions of this act, because the scheme is different, and for the reason alone, if for no other, that this proceeding is not started by petition. It is true that it has been held in the Second department that one provision of the General Condemnation Law could be read into this statute, to wit, the provision that if the commissioners elect to abandon the proceedings they must be abandoned within 30 days after the entry of the final order. See In re Commissioners of Palisades Park (Sup.) 151 N. Y. Supp. 977. Such a holding, however, is no authority for allowing the landowner to raise questions of fact upon the return of the notice for the appointment of appraisal commissioners where the statute is apparently framed upon an entirely different method of procedure. If, then, these plaintiffs have a de-

fense to this appropriation of their lands, for which no opportunity of assertion is presented in these condemnation proceedings, this action in equity is clearly authorized. No court will require a futile proceeding, nor will any court require these plaintiffs to suffer the expense and the business injury of necessity resulting from such proceeding. If the conclusion be justified, however, that upon the return of the notice for the appointment of appraisers any interested party may raise any legal objection to their appointment, to that extent the plaintiffs have a remedy in the condemnation proceeding as far as their right rests upon legal objections which are not dependent upon an issue of fact. If, however, the plaintiffs have any ground for objecting to condemnation by reason of *any facts not appearing upon the face of the proceedings,* they may proceed in equity to enjoin those proceedings for lack of opportunity in the proceedings themselves to present those issues of fact.

[4] I am unable to find any substantial issue of fact raised by the papers in this case which furnishes valid ground of objection to this condemnation. It is contended, first, that this condemnation is purely for æsthetic purposes, to preserve the scenic beauty of the Hudson river, and that such use is not a public use, authorizing the appropriation of land under the right of eminent domain. In the matter of the application of the city of New York to acquire title to property for widening Clinton avenue in the borough of Brooklyn, reported in 57 App. Div. 166, 68 N. Y. Supp. 196, the court held chapter 257 of the Laws of 1899, entitled " 'An act in relation to Clinton avenue, in the borough of Brooklyn, in the city of New York,' which adds a 20-foot strip to each side of a portion of Clinton avenue and provides that the 'two strips of land hereby added to said avenue shall not be added to its traveled portion, but shall be reserved and preserved as ornamental courtyards for the benefit and improvement of said avenue,' and determines the extent to which the original owners may make use of the ornamental courtyards," contemplates a public purpose, to accomplish which the power of eminent domain may properly be exercised. Justice Woodward, now a member of this court, in writing for the department, said in his opinion, adopted by the court:

"It is not necessary that every part of all highways should be used for the passage of vehicles and pedestrians; it is proper that some regard should be had for the æsthetic tastes, the comfort, health, and convenience, of the public, and, if the Legislature had enacted that Clinton avenue should be increased in width to the extent provided in this act, and had provided that a strip in the center of the highway, 40 feet wide, should be devoted to trees and flowers, as is done in many of our cities, it would hardly have been questioned that this constituted a public use, in the same sense that a park preserve is generally recognized as a public use. * * * Because the Legislature has preferred to leave this breathing space upon the sides of the street, subject to the limited use of the owners of the fee, does not change its essential character, and the improvement is undoubtedly much less expensive than the one which is suggested as within the legislative discretion. 'The adjudicated cases likewise establish the proposition,' say the court in Shoemaker v. United States, 147 U. S. 298 [13 Sup. Ct. 390, 37 L. Ed. 170], 'that, while the courts have power to determine whether the use for which private property is authorized by the Legislature to be taken, is in fact a public use, yet, if this question is decided in the affirmative, the judicial function is ex-

hausted; that the extent to which such property shall be taken for such use rests wholly in the legislative discretion, subject only to the restraint that just compensation must be made.'"

This case was appealed to the Court of Appeals, which affirmed the judgment, and answered in the affirmative the second question submitted, whether the lands sought to be taken by said act were taken for public use. 167 N. Y. 624, 60 N. E. 1108. It will be borne in mind that not only public parks existed both south and north of the land in question, but that said parks are intended to include various strips of land between them. The land in question adjoins the Hudson river, which is in itself a public highway as well as a public park, utilized by the public for rest, recreation, and enjoyment, the same as any other public park. If land were sought to be condemned for park purposes, it could hardly be objected that part of the land was unadaptable therefor as being rugged and steep, of which practical use could not be made by the public. It is adaptable as incidental to the park of which use could be made. Such inaccessible land might also be condemned for adornment and to preserve the scenic beauty, as incidental at least to such a park. Whatever technical averment may be made that the land is not adaptable to the public use, if the term "public use" be so extensive as seems to be indicated in the authorities cited, there can be no substantial doubt that the shutting down of this quarry and the removal of its accessories do present some opportunity for adornment and improvement of scenic beauty, so that the courts must hold that the land is adaptable to a public use. This must then be ruled as a question of law.

[5] Plaintiffs again insist, and have alleged in their complaint, that this land is taken by the commissioners solely for private purposes. It is not contended, however, that the land appropriated is to be used for private gain. It is not claimed that the quarry situated thereon is to be worked either for public or private profit. The real contention is that private interests desire the discontinuance of the quarry works because of the annoyance caused by the blasting on the quarry, and that these are the considerations which have actuated the attempted appropriations by the commissioners. The land appropriated comes into the possession of state officers in trust for the people of the state. There is a conclusive presumption that they will fulfill their trust obligations, and will so use the land as to give to the public the use thereof in the preservation and improvement of the scenic beauty of the Hudson river and of the state parks. The inspiring motives of the commissioners cannot be challenged, if public use be attained. Such a challenge would open a tremendous field for irrelevant discussion. The state, with power to take, has delegated the power of selection to these commissioners. The property owner receives full compensation for his property taken, and in this alone is he legally interested, as long as the property is adaptable to a public use, and the result of the appropriation is so to apply it. The want of power to condemn for private uses exists where such is the result of the condemnation. "It has been held that, if there is a legislative declaration that the use is a public one, the courts will hold it to be such, un-

less it manifestly has no tendency to promote such use." 15 Cyc. 580. At page 582 it is further said that "a use is not rendered a private one by the mere fact that a part or the whole of the cost of constructing the improvement is paid by individuals, although such individuals are the persons most benefited by the improvement." Harris v. Thompson, 9 Barb. 350. There is no allegation in the complaint that these commissioners have acted in bad faith, and the fact that private neighbors are so far interested in the improvement as to contribute largely to the cost of its acquisition is no answer to the right of condemnation, provided the property is adaptable for public use, and the result of its condemnation is its application thereto. In People v. Smith, 21 N. Y. 598, the opinion in part reads:

"The necessity for appropriating private property for the use of the public or of the government is not a judicial question. The power resides in the Legislature. It may be exercised by means of a statute which shall at once designate the property to be appropriated and the purpose of the appropriation, or it may be delegated to public officers, or, as it has been repeatedly held, to private corporations established to carry on enterprises in which the public are interested. There is no restraint upon the power, except that requiring compensation to be made. And where the power is committed to public officers, it is a subject of legislative discretion to determine what prudential regulations shall be established to secure a discreet and judicious exercise of the authority."

From the conclusion reached, that no issue of fact is raised upon which the right of condemnation rests, the jurisdiction of equity must be denied. We do not assume, however, to pass upon the constitutional objections to this act which appear upon the face of the proceedings, and which, as we hold, can be raised in the condemnation proceedings now pending in the Ninth district. The order of the Special Term should therefore be reversed, with $10 costs and disbursements, and the motion for a temporary injunction denied, with $10 costs, upon the ground that the record presents no issues of fact upon which the right to condemn depends, and that all legal objections can be raised in the proceedings for condemnation instituted in the Ninth district.

Order reversed, with $10 costs and disbursements, and motion for temporary injunction denied, with $10 costs, upon the ground that the record presents no issues of fact upon which right to condemn depends, and all legal objections can be raised in proceeding for condemnation instituted in the Ninth district. All concur.